## STATE v. MATTHEW EICH.[1]

December 16, 1938.

No. 31,802.

[1]Reported in 282 N. W. 810.

*William S. Ervin,* Attorney General, *Roy C. Frank,* Assistant Attorney General, *Ed J. Goff,* County Attorney, and *Arthur Markve,* Assistant County Attorney, for the State.

*Frederick P. Warber* and *Robert H. Petzke,* for defendant.

JULIUS J. OLSON, JUSTICE.

Defendant was charged with violating 2 Mason Minn. St. 1927, § 10448, which provides that "any person who unjustifiably administers any poisonous or noxious drug or substance to any animal, * * * or unjustifiably exposes any such drug or substance with intent that the same shall be taken by any animal," is guilty of a felony.

The information charged that "said Matthew Eich on the 30th day of March, A. D. 1938, at the city of Minneapolis, * * * then and there being, did wilfully, unlawfully, wrongfully, unjustifiably, knowingly and feloniously expose a certain poison, drug and substance generally known as strychnine, * * * with intent that the same should be taken by an animal, to-wit: a dog [describing it], the property of and belonging to George A. Furlong, and which said strychnine was then and there taken and eaten by the said dog; contrary to the statute," etc.

Defendant's demurrer was based upon the contentions that (1) the facts alleged did not state a public offense; (2) the statute violates the due process clause of U. S. Const. Amend. XIV, § 1, and Minn. Const. art. 1, § 7; and (3) the information is also contrary to Minn. Const. art. 1, § 6, in that it does not inform the defendant of the nature and cause of the accusation. The demurrer was over-

136

ruled. Thereupon the court, upon defendant's request and pursuant to 2 Mason Minn. St. 1927, § 10756, certified five questions as so important and doubtful as to require decision by this court.

■ The first question is whether the act, § 10448, violates U. S. Const. Amend. XIV, § 1, in that it is so indefinite as to deprive defendant of liberty without due process of law.

The principles of law applicable in determining whether a statute, as applied to a particular defendant, is unconstitutional for indefiniteness have been discussed recently by this court in State v. Northwest Poultry & Egg Co. 203 Minn. 438, 281 N. W. 753. It is sufficient here to state that a statute is unconstitutional for indefiniteness if it requires or forbids in terms so vague that men of common intelligence must guess at its meaning and differ as to its application. And while a penal statute must be strictly construed, yet it is not necessary that it designate every particular circumstance that calls for imposition of the penalty. Where the act of the legislature has as its purpose to prohibit an undesirable form of conduct rather than a specific act, the definition by its very nature must be broad. Consequently if it can be determined with reasonable definiteness what is disapproved, the statute is not unconstitutional on this ground.

Defendant's main assault is that the word "unjustifiably" fails to present a sufficiently definite standard. Because of the complexity of our social organization and the attendant difficulty of successfully enumerating each specific forbidden act, the legislature by necessity has had to enact many criminal statutes which are broad in their scope and character. Otherwise the fertile mind of the criminal could find omissions and loopholes as means of escape. The statute belongs to the category of such comprehensive and inclusive acts as do not readily yield to exactness of definition. We think it presents a sufficiently definitive standard. It is possible to determine with reasonable certainty what the law regards as forbidden. Many factors indicate this. The word "unjustifiable" and its antonym "justifiable" are far from being unknown in our law. For instance, 2 Mason Minn. St. 1927, § 10067, makes a premeditated killing of a human being murder in the first degree unless it is

"excusable or justifiable"; and by § 10113 the term "justifiable" is used in connection with libel. While often the statutes define what is meant by the word, yet that would not seem to be always necessary, as the word from common usage has a well known meaning. Unquestionably the legislature has the power to prohibit absolutely the use or exposure of poison to or in connection with any animal, wild or domestic. Yet the legislature might well think that it was not feasible to enact such a rigid law in light of the conditions existing in our society where, by common acceptance, poisoning might be justified in the light of the interests to be protected. Defendant should not be heard to complain that the legislature has recognized that in some cases it is not a crime to use or expose poison when the dividing line, though not clear-cut, is ascertainable with reasonable definiteness. Poisoning of animals is, in most instances, a secret and anonymous act. It is of that nature because the party using or exposing poison realizes that there is a moral stigma attached to his conduct, not approved by the norms accepted and adhered to by society as a whole. A man of ordinary understanding certainly must realize that it is improper from the point of view of our moral standards to poison or expose poison to an animal belonging to another. Yet it is possible that due to a change or rise of a peculiar circumstance the impropriety dissolves in the new attitude created by the circumstance. The statute must be broad enough so that flexibility will permit intelligence to prevail in its application. It seems to us that a man of ordinary prudence, acquainted with ordinarily accepted moral standards, would have a reasonably clear and certain concept as to when poison could or could not be used or exposed.

In People v. Curtiss, 116 Cal. App. (Supp.) 771, 775, 300 P. 801, 802, the statute provided that, "any person who wilfully * * * inflicts thereon (on any child) *unjustifiable* physical pain or mental suffering * * * is guilty of a misdemeanor." The statute was held to be sufficiently definitive, the court saying (116 Cal. App. 779, 300 P. 804):

"The standard thus set up is not abstract. It is concrete. The concept by which it shall be determined whether the punishment

is or is not unjustifiable is a fluid one—like the concept by which the action of the 'reasonable man' serves as a criterion in determining the violations of duty which amount to negligence."

If this court were to hold the standard enunciated in this statute too uncertain we would be compelled to hold subsequently many other of our criminal statutes likewise unconstitutional on the same ground although in daily application they operate without difficulty or prejudice. For instance, § 10078 provides that a homicide which results from "culpable negligence" is manslaughter. Obviously these words present as broad a standard as "unjustifiable." Again, § 10070 makes the killing of a human being third degree murder when perpetrated by an act "eminently dangerous" to others and "evincing a depraved mind, regardless of human life," although without design to effect death. Furthermore, this court has sustained the constitutionality of a statute making it a penal offense to drive a motor vehicle on a public highway at a speed greater than "reasonable and proper," having regard to the traffic and use of the way or so as to "endanger the life or limb or injure the property of any person." State v. Goldstone, 144 Minn. 405, 408, 175 N. W. 892.

Another factor favoring a construction of certainty is that this provision has appeared in our statutes for many years. Fundamentally identical is G. L. 1889, c. 209, § 5. (By that act the offense was only a misdemeanor.) Also statutes none the less comprehensive have repeatedly been sanctioned by the courts. Thus the "shortest practicable route" was sustained in Sproles v. Binford, 286 U. S. 374, 393, 52 S. Ct. 581, 587, 76 L. ed. 1167, 1182; "to do all in one's power," Miller v. Strahl, 239 U. S. 426, 434, 36 S. Ct. 147, 149, 60 L. ed. 364, 368; a statute prohibiting grazing of sheep on any "range" previously occupied by cattle or "usually occupied by any cattle grower," was sustained in Omaechevarria v. Idaho, 246 U. S. 343, 345, 38 S. Ct. 323, 324, 62 L. ed. 763, 767.

We think it was proper for the legislature to define the characteristics of the crime in the manner here adopted.

■ The due process clause does not render unconstitutional a statute which compels a party to act at his peril. This is so because "the law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it; * * *. 'The criterion in such cases is to examine whether common social duty would, under the circumstances, have suggested a more circumspect conduct.' 1 East P. C. 262." Holmes, J. in Nash v. United States, 229 U. S. 373, 377, 33 Sup. Ct. 780, 781, 57 L. ed. 1232, 1235.

■ The second question certified is whether the statute offends the provisions of U. S. Const. Amend. XIV, § 1, guaranteeing the equal protection of the laws. We have searched counsel's brief for some specific ground upon which this claim is predicated and discover only that "Question No. 2 will not be specially argued except as the point goes to demonstrate the uncertainty and indefiniteness in the statute and in the information."

If this is the only basis, and we can discover no other, then the question may well be summarily disposed of. All persons coming within its provisions are subject to its penalty. The mere fact that one jury may convict and another acquit upon identical evidence is not sufficient to render the act violative of the equal protection clause. Such possibilities may well be due to the nature of trial by jury and the manner in which our jury system functions.

■ The third question is whether the information is so indefinite as to offend Minn. Const. art. 1, § 6, which provides: "In all criminal prosecutions the accused shall enjoy the right * * * to be informed of the nature and cause of the accusation." The purpose is plain. It is "that the accusation, whether by indictment or information, must be sufficiently specific fairly to apprise the accused of the nature of the charge against him, that he may know what to answer, and be prepared to meet the exact charge against him, and that the record may show, as far as may be, for what he is put in jeopardy." State v. Nelson, 74 Minn. 409, 414, 77 N. W. 223, 225.

By 2 Mason Minn. St. 1927, § 10665, it is provided the offense charged in an information must be in plain and concise language

140

and that all provisions of law relating to indictments and for testing their validity shall apply thereto.

It has long been established in this state that a person may be charged in an indictment in the words of the statute, "without a particular statement of facts and circumstances, when, by using those words, the act in which an offense consists is fully, directly and expressly alleged, without uncertainty or ambiguity." State v. Comfort, 22 Minn. 271; State v. Abrisch, 41 Minn. 41, 42 N. W. 543. However, if the statute does not set forth all of the elements necessary to constitute the offense an accusation which simply follows the words of the statute is not sufficient, but the additional necessary allegations must be made. State v. Howard, 66 Minn. 309, 68 N. W. 1096, 34 L. R. A. 178, 61 A. S. R. 403. Cases falling into the latter category generally arise when the statute simply names an offense or defines a crime in terms of its legal result. We think the present information falls within the principle stated in State v. Comfort, *supra*. The essential elements here stated are (1) unjustifiably exposing or administering a poisonous substance or drug to any animal, and (2) with intent that the same shall be taken by an animal. Thus the prohibited act must concur with the specified intent. We think the information need not state the facts with more particularity than here set forth. Defendant is charged in the language of the statute with having unjustifiably exposed poison with the specific intent that it should be taken by an animal therein adequately described. So we find no difficulty in holding the information sufficiently definite as not to violate this provision of our constitution, and that the charge made accords with the requirements of §§ 10641 and 10647(7).

■ The fourth question has to do with whether the information and the act under which conviction is sought are so indefinite as to offend Minn. Const. art. 1, § 7, in requiring him to answer a criminal offense, or in depriving him of liberty, without due process of law. Since we have held the statute valid and the information sufficient, it necessarily follows that this question must be answered in the negative. This necessarily follows since the procedure here put to use results in no impairment of the rights guaranteed him.

He is in no position to complain of the result flowing from a prosecution based upon a valid statute, pursued with a sufficient information, and to be proved by adequate evidence.

■ Lastly, does the statute offend Minn. Const. art. 1, § 5, in that it provides for cruel and unusual punishment? That question too must be answered in the negative. The nature, character, and extent of punishment to be imposed for criminal conduct are matters to be determined almost entirely by the legislature. Upon the courts is imposed the duty of respecting the powers conferred upon that department of our government and to the law so enacted unless "there has been a clear departure from the fundamental law and the spirit and purpose thereof and a punishment imposed which is manifestly in excess of constitutional limitations." State v. Moilen, 140 Minn. 112, 117, 167 N. W. 345, 347, 1 A. L. R. 331. We do not think the act violates constitutional restraints in providing that a violation of its provisions may subject the wrongdoer to punishment for a felony. It is primarily within the lawmaking body's power to determine the extent of punishment necessary to deter those who otherwise might submit to this form of criminal activity. The seriousness of unjustifiably administering or exposing poison is apparent to all. Both acts constitute no trifling crime, nor do they commend themselves to leniency or sympathy. The estimate of society of the importance of this kind of offense and the punishment deemed necessary to eliminate it are manifested in the act itself. We cannot say it is so undeserved as to be violative of constitutional mandate. There is a wide range within which punishment is to be measured, and properly so. Poisoning one dog might well be considered less harmful to society than poisoning a neighbor's entire herd of cattle or flock of sheep.

We conclude that all questions certified must be answered in the negative.

The cause is accordingly remanded for further proceedings according to law.

So ordered.