# LLOYD BRIGGS v. MINNESOTA DELTA UPSILON CLUB.[1]

January 30, 1942.

No. 32,982.

*Hoke, Cobb & Janes,* for appellant.

[1]Reported in 2 N. W. (2d) 151.

*Wright & Wright, Faegre, Benson & Krause, Paul J. McGough,* and *Wright W. Brooks,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Action to recover damages for injuries sustained by plaintiff as the result of a fire at the Delta Upsilon fraternity house in Minneapolis, Minnesota. Plaintiff had a verdict for $6,000. Defendant appeals from the order denying its motion for judgment notwithstanding the verdict or a new trial.

Plaintiff, a student at the University of Minnesota, was a member of the Minnesota chapter of Delta Upsilon fraternity and at the time of the fire was living at the fraternity house. Title to the house was in defendant, Minnesota Delta Upsilon Club, a corporation formed to hold title to the property occupied by the active chapter of the fraternity.

The house is a three-story brick building facing south on University avenue at the intersection of University and Tenth avenues. It is about 50 feet wide and 35 feet deep. At the time of the fire, the third floor was partitioned into a dormitory, a small washroom, and four study rooms. Three of the study rooms extended across the south side or front of the house. The fourth was located in the northwest corner. The dormitory, a room about 15 by 25 feet, was in the northeast quarter. It was used solely for sleeping purposes. Eleven or twelve boys usually slept there on double-deck beds. The dormitory had but one door, which was located in its west wall near the north side of the building. The stairway from the second to the third floor was near the north and west sides of the house. At the head of the stairs was the small washroom. The house had an outside fire escape which had its third-floor exit from the southermost window of the west wall. This window was in the study room in the southwest corner of the building. Plaintiff estimated the distance from the fire escape to the head of the stairs to be 15 feet. The plans show the distance to be about 24 feet. The single door of the dormitory was about five feet from the head of the stairs. To get from the dormitory

to the fire escape, one had to go around the staircase and then into the study room in the southwest corner of the building, where the exit to the fire escape was located.

The fire broke out in the early morning of March 6, 1939. Plaintiff, asleep in the third-floor dormitory, was awakened in the dark, smoke-filled room by coughing, yelling, and general confusion. He twice attempted to make his way to the dormitory door, but each time was forced to a window for air. Being unable to get out of the dormitory, he pushed his bed up to a window, climbed out, and hung there by the iron bedrailing. Finally he lost consciousness and fell to the frozen ground below, sustaining serious injuries. Some of the boys apparently managed to get down the stairs safely. Three others, however, were trapped in the dormitory by the fire. One of these escaped injury by jumping to a near-by tree. One was seriously injured and another killed.

Plaintiff's case, as finally submitted to the jury, was based upon an alleged violation by defendant of the provisions of the state housing act. The parties stipulated that the housing act had been made a part of the charter of the city of Minneapolis. Defendant on this appeal contends (1) that as a matter of law there was no violation of the state housing act, and (2) that, even if there were, such violation was not the proximate cause of plaintiff's injuries. It also contends that the court erred in giving certain instructions to the jury and in refusing to give others requested by it. In the main, all of defendant's contentions have as their basis the claim that the trial court placed too broad a construction upon the relevant provisions of the state housing act, Mason St. 1927, § 1630-3, *et seq.*

1. Section 1630-44 of the act provides in part:

"Every multiple-dwelling hereafter erected exceeding one story in height and every building occupied above the first floor as a dwelling, shall have at least two independent ways of egress which shall be located remote from each other, and shall extend from the entrance floor to the top floor."

Defendant's argument is that the legislature has only under-taken to require that the two means of egress shall not be located near each other, and that any other requirement as to the location of the means of egress would result in amendment rather than construction of the act. We believe that defendant contends for too narrow and restricted an interpretation of the act. The legislature's purpose "of protecting human life and limb in buildings where there exists more than the ordinary peril from conflagrations" must be borne in mind in construing this provision. Wardwell v. Cameron, 126 Minn. 149, 152, 148 N. W. 110, 111; see Leuthold v. Stickney, 116 Minn. 299, 133 N. W. 856, 39 L.R.A. (N.S.) 231, Ann. Cas. 1913B, 405.

Manifestly, the legislature intended such means of egress to be so placed as to be accessible to the occupants. This follows inevitably from the very requirement that there be *ways* of egress, for it would serve no useful purpose whatsoever to provide a stairway or outside fire escape which could not be reached by the occupants. Louisville Trust Co. v. Morgan, 180 Ky. 609, 203 S. W. 555, 7 A. L. R. 396. In Wardwell v. Cameron, *supra,* plaintiff claimed that defendant had violated an earlier statute requiring an outside fire escape. One had been provided but it reached only to the second floor, requiring a jump of 18 or 20 feet to the ground. This court acknowledged that the statute did not specifically say that the fire escape should reach to the ground, but nevertheless upheld a verdict for plaintiff, reasoning that (126 Minn. 152, 148 N. W. 111) "a fire escape is but a delusion, unless thereby the person exposed to the perils of the fire is enabled to get out of and away from the burning building." In Adams v. Cumberland Inn Co. 117 Tenn. 470, 101 S. W. 428, 430, suit was brought on an ordinance requiring fire escapes upon certain types of buildings but making no provision as to the location of the fire escapes. The Tennessee court held that "upon a fair construction it requires the owner to construct them in such numbers and at such places as will afford the guests and employes a reasonable opportunity to use them and escape from the house in case of fire."

And so here we think it is fair to say that the legislature intended the means of egress to be placed in such a manner as to be reasonably accessible to the occupants.

A fair construction of the statute would require also that these ways of egress be independently accessible to those on the third floor. The statute requires "at least two independent ways of egress which shall be located remote from each other  *  *  *." What meaning did the legislature intend to convey by the use of the word "independent?" Surely, if all that was intended was that the two ways of egress should be structurally independent, that was achieved by requiring that they be located remote from each other. It is plain to us that the legislature meant they should be independent of each other insofar as the residents' opportunity for access to them was concerned. That the legislature deemed this element of independent accessibility important is demonstrated by the fact that they made certain specific provision for it in § 1630-44, reading:

"In multiple-dwellings of Class A, except in kitchenette apartments arranged in suites of not more than three rooms, kitchen and bath, the second way of egress shall be directly accessible to each apartment, group or suite of rooms without having to pass through the first way of egress. In multiple-dwellings of Class B and in kitchenette apartments, as above described, the second way of egress shall be directly accessible from a public hall."

Obviously, the types and plans of buildings are so various that general standards must be adopted; and this is just what we think the legislature did by saying "at least two independent ways of egress  *  *  *." Fairly construed, that is a general provision requiring that the residents have independent access to the ways of egress.

This construction does not leave the meaning so vague as to render the statute void for uncertainty, because the kind of activity regulated is such that "the use of general and flexible terms in fixing the standard is inescapable." State v. N. W. Poultry & Egg Co. 203 Minn. 438, 440, 281 N. W. 753, 754; State v. Eich,

204 Minn. 134, 282 N. W. 810. The statute is sufficiently certain.

2. Both the concepts of remoteness and of independent accessibility are relative and must necessarily be applied with reference to the facts and circumstances of the particular case. The statutory provisions were read to the jury, and they were instructed to take into consideration the size and use of the rooms, as well as the relative location of the fire escape and stairway to each other and to the rooms. The instructions were correct. We have examined the record and are convinced that a jury question was presented as to whether defendant complied with the statute.

3. Defendant argues that, even if it violated the statute, the violation was not the proximate cause of plaintiff's injury, because plaintiff was unable to get out of the dormitory and hence could not have used ways of egress even though they had been placed in compliance with the statute. The cases cited by counsel on this point are of little help because the problem is not whether the statutory violation must be the proximate cause of plaintiff's injury—no one disputes that—but whether our particular statute requires the location of ways of egress in such a fashion that had they been provided plaintiff could have escaped injury. Here, again, defendant contends for too narrow an interpretation of the act. The dormitory in which some 11 or 12 boys slept was the only room on the third floor used for sleeping purposes. The other rooms were study rooms and a washroom. In view of the arrangement of the third floor, we think it was for the jury to say whether compliance with the statute would not have required either the placing of a fire escape upon a dormitory window or else the rearrangement of the rooms so that the boys could have had independent access to two ways of egress. If this had been done, we cannot say as a matter of law that plaintiff would not have been able to escape in safety. The court properly charged the jury that defendant's violation, if any, of the act must be the proximate cause of plaintiff's injury.

4. Defendant contends that because the building was erected before the passage of the act compliance with it is not required

unless there is an affirmative showing that it would be practical to do so or that the building inspector had made some specific requirement. § 1630-107. However, § 1630-6 provides that "no dwelling erected prior to the passage of this act shall at any time be altered so as to be in violation of those provisions of this act applicable to such dwelling." When plaintiff first went to live at the fraternity house in 1935, the third floor had a large dormitory and two study rooms. The dormitory then extended across the south or front of the house. It was possible to climb out the south windows of the dormitory and drop to the front porch. The fire escape, in the same place as at the time of the fire, then led directly from a dormitory window. Sometime in 1937 or 1938 the third floor was altered to the arrangement heretofore described. We thus have no doubt that it was correct to submit to the jury the question whether there were "at least two independent ways of egress which shall be located remote from each other."

Affirmed.