STATE v. ANDREW J. SUESS.
STATE v. W. H. BERKNER.[1]

March 14, 1952.

Nos. 35,575, 35,576.

[1]Reported in 52 N. W. (2d) 409.

*J. A. A. Burnquist*, Attorney General, *Lowell J. Grady*, Assistant Attorney General, and *Attell P. Felix*, County Attorney, for the State.

*Charles A. Fortier*, for defendants.

FRANK T. GALLAGHER, JUSTICE.

Defendants, Andrew J. Suess and W. H. Berkner, were each charged by separate informations filed by the county attorney of Morrison county with a violation of M. S. A. 100.29, subd. 10, making it unlawful—

"to throw or cast the rays of a spotlight, headlight, or other artificial light on any highway, or in any field, woodland, or forest, for the purpose of spotting, locating or taking any wild animal, except raccoons when treed with the aid of dogs, while having in possession or under control, either singly or as one of a group of persons, any firearm or other implement whereby big game could be killed, unless the same is unloaded in both barrels and magazine and properly encased or broken down."

Each defendant demurred to the information "on the grounds that the facts stated do not constitute a public offense." The district court overruled the demurrers in both cases and, with the consent

of the state and the defendant in each case, certified to this court, pursuant to § 632.10, the questions involved as important and doubtful. The cases were consolidated for argument and hearing before this court.

In connection with the Suess case, the trial court certified these questions:

"First—Is M. S. A. Section 100.29, subdivision 10, so general or so vague, indefinite and uncertain as to deny due process of law?

"Second—Does the Information, by virtue of M. S. A. Section 610.12 or otherwise, state a public offense?"

With respect to the Berkner case, the trial court certified only the first question above.

The information in the Suess case charges:

"* * * that on or about the 16th. day of November in the year A. D. 1950, in the Town of Green Prairie, County of Morrison, State of Minnesota, one Andrew J. Suess, then and there being, did wilfully, wrongfully and unlawfully violate Section 100.29 (10) of Minnesota Statutes for 1949 as follows, to-wit: The said Andrew J. Suess, while riding as a passenger in a 1949 Mercury Coupe automobile, did then and there have in his possession and under his control a firearm whereby big game could be killed, said firearm not being then and there unloaded in both barrel and magazine not properly encased or broken down, for the purpose of spotting, locating and taking wild animals, other than raccoons treed with the aid of dogs, while one W. H. Berkner, then and there being the driver of said 1949 Mercury Coupe, did then and there wilfully, wrongfully and unlawfully throw and cast rays of a spotlight upon a highway, field and woodland in said township, for the purpose of spotting, locating and taking wild animals, other than raccoons treed with the aid of dogs, against the form of the statute in such cases made and provided and against the peace and dignity of the State of Minnesota."

The information in the Berkner case charges:

"* * * that on or about the 16th. day of November in the year A. D. 1950, in the Town of Green Prairie, in the County of Morrison, State of Minnesota, one W. H. Berkner then and there being, did wilfully, wrongfully and unlawfully throw and cast the rays of a spotlight upon a highway, field and woodland in said township for the purpose of spotting, locating and taking wild animals, other than raccoons treed with the aid of dogs, while having in his possession and under his control, as one of a group of persons, a firearm whereby big game could be killed, said firearm not being then and there unloaded in both barrels and magazine and not properly encased or broken down, against the form of the statute in such cases made and provided and against the peace and dignity of the State of Minnesota."

Inasmuch as the trial court certified in both cases the question whether § 100.29, subd. 10, is so general or so vague, indefinite, and uncertain as to deny due process of law, we shall first consider that question, which will dispose of that matter in both cases.

The state contends that § 100.29, subd. 10, is not unconstitutional for vagueness; that if any portion of the statute is vague in a constitutional sense it can be only that portion which reads: "or other implement whereby big game could be killed." The state then argues that, assuming without conceding that the above-quoted portion of the statute should be void for vagueness, the remaining provisions of the statute would still be valid under § 645.20, which provides in part that, unless there is a provision in the law that the provisions shall not be severable, the provisions of all laws shall be severable. There is no provision as to nonseverability of § 100.29. The state further argues that neither defendant may be heard to complain of the invalidity for vagueness of the phrase "or other implement whereby big game could be killed," because the informations here involved charge each defendant with the possession of a firearm and not of some "other implement."

On the other hand, defendants contend that the statute is unconstitutional and that it denies due process of law, because it is so

general in its language that it arbitrarily makes acts criminal which are innocent and which it is unreasonable to presume were intended to be criminal violations of the statute, and, further, because the innocent acts prohibited have no reasonable relationship to the legislative purpose. Defendants cite statutes, referred to herein, which they consider necessary for a determination of the above contention, including Minn. St. 1941, § 100.055 (L. 1941, c. 498, § 1), in which M. S. A. 100.29, subd. 10, had its origin. L. 1945, c. 248, repealed § 100.055, and in lieu thereof § 100.29, subd. 1(10), was enacted. L. 1949, c. 150, § 31, repealed Minn. St. 1945, § 100.29, subd. 1(10), and reënacted it as § 100.29, subd. 10, as above set forth, with the phrase, "It shall be unlawful," inserted at the commencement of the subdivision. Defendants call our attention to the language of § 100.055, which read in part:

"* * * for the purpose of spotting, locating, hunting, catching, taking, killing, or wounding *any big game animal*." (Italics supplied.)

The present language of § 100.29, subd. 10, is as follows:

"* * * for the purpose of spotting, locating or taking *any wild animal*, * * *." (Italics supplied.)

Section 97.40, subd. 5, defines *wild animals* as all living creatures, not human, wild by nature, endowed with sensation and power of voluntary motion, and includes quadrupeds, mammals, birds, fish, amphibians, reptiles, crustaceans, and mollusks. Section 97.40, subd. 8, includes deer, moose, elk, and caribou as *big game*. Section 97.40, subd. 10, states that every provision relating to any *wild animal* shall be deemed to apply to any part thereof with the same force and effect as it applies to the whole. Section 97.55, subd. 9, makes a violation of § 100.29, subd. 10 or 11, a gross misdemeanor. Section 97.50, subd. 6, provides for the seizure of all motor vehicles, trailers, and airplanes used in violation of § 100.29, subd. 10 or 11.

Defendants maintain that the obvious purpose of the statute is to prevent the shining of *big game animals,* which, for practical purposes, they consider means deer in Minnesota. They argue that,

when the present statutory definition of *wild animal* is considered, the present language of § 100.29, subd. 10, alters the whole meaning and effect of the statute and brings about weird results. As examples of some of these purported weird results, they argue that an entomologist could not use his flashlight to capture a butterfly while a companion had possession or control of the prohibited instrumentality, whether a firearm or otherwise; that under those circumstances a person could not use a flashlight to locate a rattlesnake, wildcat, bear, or other vicious animal; and that even a farmer could not use a flashlight or other light to locate a weasel or fox which was raiding his chicken coop. Although they concede that these suggested examples seem ridiculous, they maintain that they are dealing with a statute which is as broad as possible in its scope and which requires no criminal intent, motive, or bad faith; and that under the language of the statute such examples cited could be legally gross misdeameanors. It is their position that many of the above difficulties arise chiefly by reason of the definition of *wild animal* contained in § 97.40, subd. 5.

■ Bounded by constitutional restraints, the legislature is vested with a great amount of discretion in defining and declaring rules of conduct. State v. Northwest Poultry & Egg Co. 203 Minn. 438, 281 N. W. 753.

It is undisputed, and defendants concede, that the legislature has the power to preserve useful or valuable game and wild animals. They argue, however, that this does not mean that the legislature may extend its power by defining a wild animal as meaning every conceivable form of undomesticated life and use such definition in a criminal statute in such a manner as to interfere with the ordinary process of living in our society.

A criminal statute must be definite enough to give notice of the conduct required to anyone who desires to avoid its penalties; it must be sufficiently definite to guide the judge in its application and the attorney in defending a person charged with its violation; and no more than a reasonable certainty can be demanded. Boyce Motor Lines, Inc. v. United States, 342 U. S. 337, 72 S. Ct. 329, 96

L. ed. 367; Lanzetta v. New Jersey, 306 U. S. 451, 59 S. Ct. 618, 83 L. ed. 888. A criminal statute is unconstitutional for indefiniteness or uncertainty if what it requires or forbids is set out in terms so vague that people of common intelligence have to guess at what it means and if they differ as to its application. State v. Northwest Poultry & Egg Co. 203 Minn. 438, 281 N. W. 753, *supra;* Connally v. General Const. Co. 269 U. S. 385, 46 S. Ct. 126, 70 L. ed. 322. Due process requires that penal legislation expressed in general and flexible terms furnish a test based on knowable criteria which men of common intelligence who come in contact with the statute may use with reasonable safety in determining its command. Collins v. Kentucky, 234 U. S. 634, 34 S. Ct. 924, 58 L. ed. 1510. Absolute certainty is not required; it is not necessary that there be mathematical precision in the statement of the conduct demanded or disapproved. State v. Northwest Poultry & Egg Co. *supra;* State v. Schaeffer, 96 Ohio St. 215, 236, 117 N. E. 220, 226, L. R. A. 1918B, 945, Ann. Cas. 1918E, 1137.

As stated by this court in State v. Northwest Poultry & Egg Co. 203 Minn. 440, 281 N. W. 754:

"The uncertainty hit at is not the difficulty of ascertaining whether close cases fall within or without the prohibition of a statute, but whether the standard established by the statute is so uncertain that it cannot be determined with reasonable definiteness that any particular act is disapproved. Nash v. United States, 229 U. S. 373, 33 S. Ct. 780, 57 L. ed. 1232; United States v. Wurzbach, 280 U. S. 396, 50 S. Ct. 167, 74 L. ed. 508."

It is the duty of courts to sustain legislative enactments as reasonably certain when possible, and they will resort to all acceptable rules of construction to discover a competent and efficient expression of the legislative will. Coggins v. Ely, 23 Ariz. 155, 202 P. 391; State v. Partlow, 91 N. C. 550, 49 Am. R. 652. In construing the constitutionality of a legislative act, the intent of the legislature must be ascertained from the language of the entire act read in the light of the object evidently in view. Every presumption is in favor of the constitutionality of the act, and the court should not declare it

unconstitutional unless it is satisfied, after careful consideration, that it conflicts with some provision of the state or federal constitutions. If the act is reasonably susceptible of two different constructions, one of which will render it constitutional and the other unconstitutional, the former construction must be adopted. Hassler v. Engberg, 233 Minn. 487, 48 N. W. (2d) 343. When a legislative act has as its purpose the prohibition of an undesirable form of conduct rather than a specific act, the definition by its very nature must be broad. Therefore, if it can be determined with reasonable certainty what conduct is disapproved, the statute is not unconstitutional on that ground. State v. Eich, 204 Minn. 134, 282 N. W. 810.

Applying the above principles of law to the question before us, it is our opinion that § 100.29, subd. 10, is not so general, vague, indefinite, or uncertain as to deny defendants due process of law, and we hold that the section is constitutional. Upon a reading of the statute in question, we believe that a person of common intelligence could determine with reasonable certainty, without having to guess at what it means, that the conduct disapproved by the statute was the shining of an artificial light on the prohibited places for "spotting" purposes while having in possession or under control, either singly or with a group, a loaded firearm or other implement capable of killing big game animals, which even defendants agree for practical purposes in Minnesota means deer. It is true that the statute refers to "spotting, locating or taking any wild animal," which, as defined in § 97.40, subd. 5, includes a large variety of creatures not human. However, the statute is clearly aimed at the prevention of shining big game animals, which includes deer. It is true also that the act as originally passed in 1941 (§ 100.055) referred to "any big game animal," while § 100.29, subd. 10, refers to "any wild animal." The intention of the legislature in making this change is apparent. Under the original act, a perfect defense for a "shiner" would be that his purpose was not to locate or kill a deer, but that he was attempting to locate or kill a fox or a skunk,

for example, unless he actually was caught in the act of "taking" a deer or other big game animal.

In order to prevent potential criminals or lawbreakers from finding omissions and loopholes as a means of escape from the intended consequences of a criminal act, it is sometimes difficult for the legislature to enumerate each specific act forbidden. For that reason, a legislature by necessity has had to enact many criminal statutes which are broad in their scope and character. State v. Eich, 204 Minn. 134, 282 N. W. 810, *supra*.

It is well established that the state has the right to regulate the taking of wild animals in any manner the legislature sees fit. Waldo v. Gould, 165 Minn. 128, 206 N. W. 46; State v. Rodman, 58 Minn. 393, 59 N. W. 1098; State ex rel. Ohsman & Sons Co. Inc. v. Starkweather, 214 Minn. 232, 7 N. W. (2d) 747. See, also, M. S. A. 97.42.

It cannot be said that the term "firearm," found in the statute here, is so vague, indefinite, or uncertain as to render the statute unconstitutional on that ground, since that term has a well-understood and accepted meaning. Neither can it be said that the term "or other implement whereby big game could be killed," when associated with the word "firearm," as it is here, is so vague or uncertain as to make it impossible of understanding. Obviously, it refers to some lethal instrument such as a bow and arrow, capable of killing big game animals. In case the intent of the legislature is not clear, the meaning of doubtful words in a legislative act may be determined by reference to their association with other associated words and phrases. Neal v. Clark, 95 U. S. (5 Otto) 704, 24 L. ed. 586; Patton v. United States, 159 U. S. 500, 16 S. Ct. 89, 40 L. ed. 233. Thus, when two or more words are grouped together and ordinarily have a similar meaning, but are not equally comprehensive, the general word will be limited and qualified by the special word. Boardman v. State, 203 Wis. 173, 233 N. W. 556; 2 Sutherland, Statutory Construction (3 ed.) § 4908. Neither defendant may be heard to complain of the invalidity for vagueness of the phrase "or other implement whereby big game could be killed,"

because the information here involved charged each defendant with the possession of a firearm and not some "other implement."

It has been argued by defendants that under a strict interpretation of the act a person could do nothing to protect himself or his property from the violence of any wild animal as defined in the statute without subjecting himself to a criminal charge. We cannot agree with some of the extreme possibilities submitted by them; for example, that a farmer could not use a flashlight or other light to locate a weasel, fox, or skunk that was raiding his chicken coop, or that a person using a light to locate something in his path while he or his companion had control or possession of one of the prohibited instrumentalities would be guilty of violating the statute if the object turned out to be the leg of a deer or a rabbit.

Courts are inclined to give reasonable and sensible construction to criminal statutes in order to determine whether the language conveys sufficiently definite warnings as to the proscribed conduct when measured by common understanding and practice. It is obvious that the statute is not aimed at the innocent act of a person protecting his property within the confines of his own domain. Neither is it aimed at a person innocently lighting his path at night by the aid of a flashlight. It is designed primarily to prohibit the shining and spotting of big game animals, especially deer, while having in possession loaded firearms or other implements capable of killing them. Any big game hunter knows that such animals freeze in their tracks when the rays of a spotlight are suddenly cast upon them in the darkness of the night and are then easy prey to the deadly aim of an illegal hunter. Persons engaged in such nefarious acts do not need the advice of a lawyer to inform them that they are breaking the law. Anyone desiring to remain safely outside the area of the proscribed conduct can easily do so by the simple process of unloading the firearm and properly encasing it or breaking it down. A bow and arrow or other implement capable of killing big game animals can also be covered. On the other hand, "one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line." Boyce Motor

Lines, Inc. v. United States, 342 U. S. 337, 340, 72 S. Ct. 329, 331, 96 L. ed. 367, 371.

The question whether M. S. A. 100.29, subd. 10, is so general or so vague, indefinite, and uncertain as to. deny due process of law is answered in the negative.

■ In connection with the second question certified, as to whether the information in the Suess case states a public offense, it is our opinion that it does.

An information or indictment in order to be good must aver every essential element of the crime positively and not inferentially. State v. Lopes, 201 Minn. 20, 275 N. W. 374. M. S. A. 628.19 provides:

"No indictment shall be insufficient, * * * by reason of a defect or imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

A defendant must know from an information with what he is charged and against what he is required to defend himself. State v. Viering, 175 Minn. 475, 221 N. W. 681. The information or indictment must be considered in its entirety and construed as such. State v. Stock, 169 Minn. 364, 211 N. W. 319. One test of the sufficiency of an indictment is whether the accused will be protected from a second prosecution for the same offense. A conformation to the requirements of § 628.12, as qualified by § 628.18, is all that is required. State v. Shannon, 177 Minn. 278, 225 N. W. 20. This court further said in the Shannon case (177 Minn. 281, 225 N. W. 21) :

"In construing an indictment it will not do to dissect it and predicate attacks upon each portion by itself. Were this practice permissible, serious doubts could be raised as to the sufficiency of many valid indictments."

Defendant Suess is directly charged in the information with a violation of § 100.29, subd. 10. This direct charge is followed by a detailed statement of the manner in which the state claims he violated the statute. Section 100.29, subd. 10, makes unlawful the shining of the light while having in possession, either singly or as one of a group of persons, any firearm, loaded and not properly

encased or not broken down. Both elements constitute the offense. Section 610.12 provides:

"Every person concerned in the commission of a crime, whether he directly commits the act constituting the offense, or aids and abets in its commission and whether present or absent, and every person who directly or indirectly counsels, encourages, hires, commands, induces, or otherwise procures another to commit a crime, is a principal, and shall be indicted and punished as such."

It is our opinion, following the rules above cited, that the information here sufficiently informed defendant Suess as to the crime with which he was charged. Considering the information as a whole and construing it as such, it is our opinion that it contains no such defects or imperfections as would prejudice his substantial rights upon the merits. We believe that the information substantially complies with the requirements of the statute and that it states a public offense.

As to both informations, the first question certified is answered in the negative; as to the first information, the second question certified is answered in the affirmative.