In the Matter of a COMMISSION IN-
VESTIGATION OF ISSUES GOV-
ERNED BY MINNESOTA STAT-
UTES, SECTION 216A.036.

No. A06–336.

Court of Appeals of Minnesota.

Dec. 12, 2006.

Douglas A. Kelley, Steven E. Wolter, Kelley Wolter, P.A., Minneapolis, MN, for relator Gregory Scott.

Mike Hatch, Attorney General, P. Kenneth Kohnstamm, Assistant Attorney General, St. Paul, MN, for respondent Minnesota Public Utilities Commission.

Considered and decided by TOUSSAINT, Chief Judge; WRIGHT, Judge; and ROSS, Judge.

## O P I N I O N

TOUSSAINT, Chief Judge.

Relator Gregory Scott appeals from respondent Minnesota Public Utilities Commission's order denying his motion for reconsideration, arguing that the employment-restriction statute, Minn.Stat. § 216A.036 (2004), (1) did not apply to his employment; (2) is unconstitutionally vague as applied to him, and (3) did not authorize a penalty in the absence of scienter and in light of relator's reliance

on the advice of counsel. Because the statute unambiguously and constitutionally prohibited relator's employment and because the commission did not abuse its discretion by imposing a penalty for relator's violation of the statute, we affirm.

## FACTS

Relator's employment as commissioner with respondent began on August 29, 1997. After meeting with Integra Telecom, Inc., on April 8, 2004, relator initiated communications with Integra regarding employment. On or about May 4, 2004, Integra obtained a legal opinion stating that it was permissible for Integra to interview relator and to reimburse him for travel expenses to the interview. Relator wrote a letter of resignation dated May 11, 2004, to the Minnesota Governor effective at the end of the day May 18, 2004. On May 18, relator, from his office at the commission, spoke with Integra about compensation and benefits; three days later, he accepted a written offer of employment with Integra.

About two weeks after relator resigned from the commission, an anonymous e-mail requested an investigation of relator's communications and employment with Integra. On June 30, 2004, the commission requested that the Commissioner of Employee Relations investigate possible statutory and rule violations arising out of Integra's employment of relator.[1] An investigator conducted the investigation, obtained attorney general opinions, and submitted a report.

After comments were solicited on the investigator's report, the commission met

---

1. On June 9, 2004, the commission had requested that the Minnesota Attorney General investigate the matter, but that office referred the commission to the Commissioner of Employee Relations.

and issued findings, conclusions, and an order. The commission concluded that relator had violated the Commission's Code of Conduct, the Minnesota Rules, and the employment-restriction statute, Minn. Stat § 216A.036(a). The commission also ordered relator to pay a civil penalty of $2,500 as provided by Minn.Stat. § 216A.036(d) but imposed no penalty on Integra. Relator moved for reconsideration, which the commission denied.

On this certiorari appeal, relator challenges the commission's determination that he violated section 216A.036(a) and its assessment of a penalty pursuant to section 216A.036(d).

## ISSUES

1. Did the commission err in its conclusion that Integra's affiliate was "subject to rate regulation" under the employment-restriction statute, Minn.Stat. § 216A.036 (2004)?

2. Is the employment-restriction statute unconstitutionally vague as applied to relator?

3. Did the commission abuse its discretion in assessing a penalty for relator's violation of the employment-restriction statute?

## ANALYSIS

### I.

The parties dispute whether the employment-restriction statute, Minn.Stat. § 216A.036 (2004), is ambiguous. The statute states:

A person who serves as ... a commissioner of the Public Utilities Commission ... shall not, while employed with or within one year after leaving the commission ... accept employment with, receive compensation directly or indirectly from, or enter into a contractual relationship with an entity, or an affiliated company of an entity, that is subject to rate regulation by the commission.

*Id.* The statute does not specifically define the phrase "subject to rate regulation by the commission," which relator argues is capable of more than one reasonable interpretation.

■ Statutory construction is a question of law, which this court reviews de novo. *Brookfield Trade Ctr., Inc. v. County of Ramsey,* 584 N.W.2d 390, 393 (Minn.1998). If the language of the statute is unambiguous, we apply its plain meaning. Minn. Stat. § 645.16 (2004). When a statute does not expressly define a term, but the term is defined in a related statute, the statutes are in pari materia and should be construed together. *State v. Kolla,* 672 N.W.2d 1, 7 (Minn.App.2003).

Here, the absence of a definition of "subject to rate regulation by the commission" in Minn.Stat. § 216A.036 does not render the statute ambiguous. Words and phrases lacking express statutory definitions are construed according to their "common and approved usage." Minn.Stat. § 645.08(1) (2004). Phrases must also be read in context. *See id.* (stating that construction of statute should not be "repugnant to the context of the statute").

It is clear from a reading of the entire statute that it applies only to those individuals who exercise official authority to regulate companies and that it affects their employment only with companies "subject to rate regulation" by respondent. A public utilities commissioner is uniquely aware of the commission's powers and rate-regulation authority. *See N. States*

*Power Co. v. Minn. Pub. Util. Comm'n*, 414 N.W.2d 383, 386 (Minn.1987) (noting that commission is "certainly most equipped" to determine whether commissioners' contacts constitute conflicts of interest and what impact contacts might have on commission's work). Minn.Stat. § 216A.036 unambiguously states that a commissioner's employment with a rate-regulated company is restricted.

■ Relator contends that the respondent's enabling statutes, which authorize respondent to regulate public utilities, do not plainly authorize respondent to rate regulate Integra's affiliate Scott–Rice. It is undisputed that Scott–Rice was approved by respondent as a company with an alternative form of regulation. Companies may petition respondent for approval of an "alternative regulation plan," which, if approved by respondent, "must provide that the recurring and nonrecurring rates or prices that may be charged by a telephone company for price-regulated services are no higher than the approved rate or prices on file with the commission for those services on the date of the filing of the plan." Minn.Stat. § 237.762 (2004). This alternative form of regulation is referred to as "lessened rate regulation." Minn.Stat. § 237.765 (2004). These statutes make the commissioners responsible for approving plans for alternative forms of regulation that set rates to be charged for certain services and that must not allow rates higher than those previously approved by respondent. We conclude that the plain language of these statutes demonstrates that companies approved as alternative forms of regulation are subject to rate regulation by respondent.

■ Relator also argues that the legislature did not intend to restrict employment in companies not "actively" or broadly regulated by respondent. The canons of statutory construction prohibit this court from adding words to a statute to "supply that which the legislature purposefully omits or inadvertently overlooks." *Goplen v. Olmsted County Support & Recovery Unit*, 610 N.W.2d 686, 689 (Minn.App.2000) (citation omitted). Relator's sources for these qualifying adverbs are conflicting legal opinions and the commissioners' discussions, which described the legislative history, not the statutory language, as confusing. Respondent found that a "careful examination of the statutes delineating the Commission's authority over independent and small telephone companies [including Scott–Rice] demonstrates that their rates are subject to regulation by the Commission." Only after respondent concluded that the statutes demonstrated that Scott–Rice was subject to rate regulation, did it note that "Minn.Stat. § 216A.036 is complicated enough to have sent readers to the legislative history, which is ambiguous enough to have cast doubt on its meaning." The statutes might be "complicated," but the legislation uses the phrase "rate regulation," which is not ambiguous.

■ The unambiguous statutory language supports the commission's decision that Integra's affiliate, Scott–Rice, fell within the entities "subject to rate regulation by the commission" and that relator's employment with Integra violated Minn. Stat. § 216A.036.

## II.

■ Relator contends that the employment-restriction statute is unconstitutionally vague as applied to him.

■ The constitutionality of a statute presents a question of law, which we re-

view de novo. *State v. Wright,* 588 N.W.2d 166, 168 (Minn.App.1998), *review denied* (Minn. Feb. 24, 1999). Laws are presumed to be constitutionally valid. Minn.Stat. § 645.17(3) (2004); *Associated Builders & Contractors v. Ventura,* 610 N.W.2d 293, 299 (Minn.2000). Courts have a duty to uphold legislative enactments as reasonably certain when possible, and should "resort to all acceptable rules of construction to discover a competent and efficient expression of the legislative will." *State v. Suess,* 236 Minn. 174, 180, 52 N.W.2d 409, 414 (1952). The court's power to declare a statute unconstitutional should be exercised "with extreme caution and only when absolutely necessary." *State v. Fingal,* 666 N.W.2d 420, 423 (Minn.App.2003), *review denied* (Minn. Oct. 21, 2003).

▮ The void-for-vagueness doctrine requires that statutes define an offense "with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) *cited in State v. Newstrom,* 371 N.W.2d 525, 528 (Minn.1985). For the same reasons the employment-restriction statute is unambiguous, we conclude that it was sufficiently specific to provide relator with notice that entities approved for alternative forms of regulation are "rate regulated" by respondent and that employment with Integra was prohibited. The statute is not unconstitutionally vague.

### III.

▮ The employment-restriction statute authorizes a penalty of not more than $10,000 per violation. Minn.Stat. § 216A.036(d). Nevertheless, relator argues that respondent abused its discretion by imposing a $2,500 penalty against him and no penalty against Integra.

▮ The imposition of a sanction lies within the discretion of an agency. *In re Haugen,* 278 N.W.2d 75, 80 n. 10 (Minn. 1979). A sanction "must not exceed what is necessary to protect the public and to deter such conduct in the future." *Matter of Ins. Agents' Licenses of Kane,* 473 N.W.2d 869, 878 (Minn.App.1991), *review denied* (Minn. Sept. 25, 1991).

▮ Relator cites no authority, and we are aware of none, that requires respondent to apply the same penalty to both the company and the commissioner when the employment-restriction statute is violated. Although an unreasonably severe and drastic penalty would be an abuse of discretion, the $2,500 fine was neither severe nor drastic. *See Kane,* 473 N.W.2d at 877–78 (remanding sanction of revocation of insurance agents' licenses as too severe and drastic, particularly in light of sanction against company, that was "in effect little more than a slap on the wrist"). The fine was on the lower end of permissible sanctions, and the record does not establish that it impacted relator drastically. Thus, the $2,500 penalty was within respondent's discretion.

Relator also argues that respondent refused to consider scienter and relator's reliance on the advice of counsel and therefore its penalty was arbitrary and capricious. Although "some element of scienter is required" to impose a penalty, *id.* at 877, the record shows that respondent considered relator's culpability when it specifically assessed a penalty "significantly below the statutory maximum." Respondent recognized that relator made

a choice benefiting him personally rather than erring "on the side of caution" and avoiding possible damage to the "public confidence in the integrity of the Commission." The record also supports respondent's finding that relator "acted on the basis of his own legal analysis," not a legal opinion. Respondent considered relator's alleged reliance on a legal opinion[2] and determined it was not reasonable because relator did not obtain an independent legal opinion, commenced inquiries with Integra before Integra obtained an opinion, and never read Integra's legal opinion prior to taking employment with Integra. Therefore, respondent did not abuse its discretion in assessing the $2,500 penalty for violating the statute.

## DECISION

The phrase "subject to rate regulation by the commission" in the employment-restriction statute, Minn.Stat. § 216A.036 (2004), is unambiguous and not unconstitutionally vague as applied to relator. Respondent did not err in its determination that relator violated the statute and did not abuse its discretion by imposing a penalty below the statutory maximum.

**Affirmed.**

---

2. Relator does not cite Minnesota authority recognizing the defense of reliance on the advice of counsel under the circumstances presented. Minnesota has "recognized that good-faith reliance on the advice of professionals is a defense to a specific intent crime." *State v. Jacobson*, 681 N.W.2d 398, 404 (Minn.App.2004), *aff'd* 697 N.W.2d 610 (Minn.2005). The employment-restriction statute, however, does not contain a specific-intent element, and relator does not argue that it does.