STATE v. TARGET STORES, INC., AND ANOTHER.

156 N. W. (2d) 908.

March 19, 1968—No. 41,130.

*Douglas M. Head,* Attorney General, *John G. Pidgeon,* City Attorney, and *Adrian E. Herbst,* Assistant City Attorney, for appellant.

*Vennum, Newhall, Ackman & Goetz, N. L. Newhall, Jr., John R. Goetz,* and *David G. Newhall,* for respondents.

*Robins, Davis & Lyons, Solly Robins,* and *Elliot S. Kaplan,* for SC Trading Corp., amicus curiae.

*LeRoy E. Haglund* and *Lynn S. Castner,* for Minnesota Civil Liberties Union, amicus curiae.

PETERSON, JUSTICE.

This is a test case to determine the constitutionality of L. 1967, c. 165, a statute prohibiting the Sunday sale of specified classes of commodities designated as restricted. The test arises out of an order of the Municipal Court of Hennepin County (the Honorable Donald S. Burris, Judge) on October 25, 1967, dismissing criminal complaints against Target Stores, Inc., and one of its employees, for making sales of restricted commodities on Sunday, October 8, 1967, in alleged violation of this statute.[1] The order dismissing the complaints was based solely on constitutional grounds, and the state appealed from that order.[2]

Defendant Target Stores, Inc., commonly known as Target, operates a number of department stores in major suburban locations in Hennepin and Ramsey Counties, and elsewhere in Minnesota. Amicus curiae SC Trading Corporation, commonly known as Shoppers City, operates discount department stores of a similar nature and location as Target and has likewise been a defendant in criminal proceedings under the statute.[3] Amicus curiae Minnesota Civil Liberties Union ap-

---

[1] Defendant Target Stores, Inc., operates a department store in Bloomington, Minnesota. It gave prior notice to Bloomington authorities that it would open for business on that date. The store did open and sold a roll of wallpaper and a broad knife to a customer who was a Bloomington police officer. The complaints alleged that defendants "violate[d] the provisions of Section 325.911," which is L. 1967, c. 165, § 2.

[2] The appeal from the order dismissing the complaint was taken pursuant to Ex. Sess. L. 1967, c. 7. Defendants had filed a written motion to dismiss the complaint on constitutional grounds and appeared specially at the hearing in municipal court without introducing any evidence. The appealability of the order is not contested.

[3] Shoppers City has been the defendant in three proceedings—in Hennepin, Ramsey, and St. Louis Counties—in which cases, like the instant case, the complaints were dismissed on constitutional grounds. Unlike the instant

pears out of its interest in the important constitutional questions presented.

L. 1967, c. 165, printed in full text in the Appendix, prohibits [4] the sale of specific classes of commodities, designated as "restricted," on Sunday.[5] The so-called "Sunday closing" provision is subject to an alternative Saturday closing provision for establishments which elect to remain open on Sunday.[6] The specific classes of restricted commodities, important to note, are:

Cameras; musical instruments including pianos and organs; records and other recordings; phonographs and tape recorders; radio receivers and television receivers; jewelry; clocks and watches; furs; furniture and other home furnishings; home appliances; footwear; wearing apparel of all kinds; luggage; lawn mowers and other power driven or manually operated outdoor machinery and equipment; hardware and tools; paints, varnishes and wallpaper, and painting and wallpaper tools and supplies; lumber and other building materials and supplies; floor coverings.[7]

---

case, Shoppers City entered pleas of not guilty so the verdicts were entered after evidentiary hearings. Its most recent case was likewise in Municipal Court of Hennepin County (the Honorable Chester Durda, Judge) and was decided on October 24, 1967, one day prior to the order in the instant case. The printed record in that case has been submitted to this court without objection.

[4] §§ 2 and 3.

[5] § 3 also prohibits such sales on holidays, designated by § 1, subd. 5, as New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, and Christmas Day. We deem this holiday prohibition to be of no independent constitutional significance, although it may give some support to the claim that the statute is secular in character. Even though some objections as to the Sunday provisions are not necessarily equally applicable to the holiday provisions, the holiday provisions are not severable from the statute and are likewise nullified.

[6] § 4(6). The option for the alternative restriction is not conditioned upon any religious test.

[7] § 1, subd. 7. A classification of "boats and outboard motors" was eliminated by amendment prior to passage (Journal of the House, 1967, 55th day, p. 4).

Sales activities not restricted by *this* statute are:

(a)    Sales of any commodities falling outside the specific classes designated as restricted.[8]

(b)    Rentals of commodities *except* if the rental agreement incorporates an option to buy the commodity.[9]

(c)    Isolated sales from a residence by a person not regularly engaged in selling the kind of merchandise sold.[10]

(d)    Sales at specified places of entertainment and recreation for use at such places.[11]

(e)    Sales, *at retail,* for recreational purposes made by a retail seller whose business is "seasonal" as defined in the statute.[12]

(f)    Sales at a state or county fair.[13]

It is a penal statute, and the penalties imposed for violations [14] are more severe than in most of our other statutes on this subject.[15] The statute

---

[8] This follows by clear implication from the statute. Defendants' contention that they are accordingly removed from any prohibition under any other statute is considered subsequently in this opinion.

[9] § 1, subd. 6.

[10] § 4(1).

[11] § 4(2). Presumably these places include both public and private establishments, for the limiting adjective, "public," was deleted by amendment prior to passage (Journal of the House, 1967, 59th day, p. 39).

[12] § 4(6). This provision was added by amendment prior to passage (Journal of the House, 1967, 61st day, p. 21). The uncertainty introduced into the statute by this single reference to "retail" sales is noted subsequently in this opinion.

[13] § 4(7). This provision was added by amendment prior to passage (Journal of the House, 1967, 61st day, p. 21). An historic basis for separate treatment of activities at such fairs will be observed in our statute prohibiting horse racing on Sunday except at annual state and county fairs. Minn. St. 624.02.

[14] § 6.

[15] This, as will be subsequently noted, is a key element of the statutory scheme. A separate statute prohibiting the sale of motor vehicles on Sunday imposes equally severe criminal penalties and was apparently the model for the penalty section in the present statute; see, Minn. St. 168.275. Two statutes impose the potentially even more severe penalties of license revocation:

contains no express declaration of purpose and no statement of standards by which it is to be interpreted.

The constitutional challenge is made on two broad grounds: (1) That it is unconstitutional in fundamental *purpose* and (2) that, regardless of purpose, it is unconstitutional in *effect*. More specifically stated:

(1) Defendant Target and amicus curiae Shoppers City assert that the "real" purpose of the act is to suppress competition by discriminating against suburban discount stores for the advantage of downtown stores which prefer to close on Sunday, thereby exceeding the state's police power [16] and violating the due process clause of the Fourteenth Amendment. Amicus Minnesota Civil Liberties Union, alone, additionally contends that its inherent effect, constitutionally tantamount to purpose, is to "establish religion" or "to prohibit the free exercise of religion" in violation of the First Amendment.[17] These contentions, we conclude, are supported neither by evidence nor by settled principles of law.

(2) Defendants and amici contend that this statute nevertheless violates both the equal protection clause and the due process clause of the Fourteenth Amendment [18] because (a) this statute, which they

---

§ 168.276 (motor-vehicle selling on Sunday); § 154.16(8) (barbering on Sunday).

[16] They expressly concede that a purpose of establishing a common day of rest, repose, and recreation is not unconstitutional, although they do not necessarily concede its wisdom as public policy. They direct the court's attention to a proposed model Common Day of Rest Act published in 3 Harv. J. Legis. 345 as a more constitutionally permissible statute, the same model statute to which this court invited the legislature's attention in 1966 in G. E. M. of St. Louis, Inc. v. City of Bloomington, 274 Minn. 471, 474, 144 N. W. (2d) 552, 555.

[17] U. S. Const. Amend. I. Defendant Target, however, expressly states that "[it does] not urge that the present law is unconstitutional as a 'religious' measure"; amicus Shoppers City agrees.

[18] They cite also Minn. Const. art. 1, § 2, and art. 4, §§ 33 and 34. Because we have held these provisions of the Minnesota Constitution to have the same meaning as the equal protection clause of the U. S. Constitution,

assert has repealed all other statutes restricting Sunday commercial activities, singles out only retail merchants for such restraint and, even within that narrow class, has arbitrarily exempted certain commodities and certain sellers of commodities from restriction;[19] and (b) the statute, being a penal statute, is too vague and uncertain reasonably to inform a defendant of the criminal consequences of his acts. We conclude that the statute is unconstitutional on the grounds of vagueness alone, a conclusion that does not exclude reservation as to the rationality of certain other aspects of the statutory implementation of the legislative objective.[20]

1. A preliminary discussion of legislative and judicial background for such legislation affords a necessary perspective for an understanding and disposition of these important issues. First, a tradition of restricting commercial activity on Sunday, as a common day of rest and repose, is rooted deep in this state, as it is in every one of the United States except Alaska. It has existed in Minnesota since territorial days.[21] Ours is a conglomeration of statutes and amendatory or supplementary statutes, which for convenience we collectively call the "general statute," and which, with like generality, we relate to the basic prohibition of—

"* * * all noises disturbing the peace of the day; all trades, manufacturers, and mechanical employments, except works of necessity

---

Minneapolis Federation of Teachers v. Obermeyer, 275 Minn. 347, 354, 147 N. W. (2d) 358, 363, and because the same should be true as to due process, we shall refer only to the Fourteenth Amendment, with the understanding that what we hold as to the one is equally applicable as to the others.

[19] A corollary contention, buttressing the contention of unconstitutional purpose, is that the resulting statutory scheme is so irrational and unworkable as to impugn any lawful purpose of establishing a common day of rest.

[20] These reservations, as will be apparent in the opinion, are the result mostly of departure from the constitutionally less assailable model Common Day of Rest Act, footnote 16, *supra.*

[21] The territorial law, Rev. Stat. (Terr.) 1851, §§ 19 to 21, which apparently was adopted from the laws of Michigan (Mich. Rev. Stat. 1846, c. 43), was carried over verbatim into our statutes when Minnesota became a state. Pub. Stat. 1849-1858, c. 96, §§ 19 to 21.

performed in an orderly manner so as not to interfere with the repose and religious liberty of the community; *all public selling or offering for sale of property,* and all other labor except works of necessity and charity * * *." (Italics supplied.) [22]

The sweeping prohibition of this general statute is subject to a myriad of more detailed provisions having the effect either to indicate activities legislatively determined as not interfering with that basic objective or as coming within the exemption of "works of necessity and charity." [23] This basic general statute was most recently amended in

---

[22] Minn. St. 624.02. We refer to it as "Sunday closing," but an exception is made for a person who "uniformly keeps another day of the week as holy time" and acts "in such manner as not to disturb others in the observance of the Sabbath." § 624.03.

[23] § 624.02 provides: "All horse racing, *except horse racing at the annual fairs* held by the various county agricultural societies of the state, gaming, and shows [are prohibited] * * *.

"Meals to be served upon the premises or elsewhere by caterers, prepared tobacco in places other than where intoxicating liquors are kept for sale, fruits, confectionery, newspapers, drugs, medicines, and surgical appliances may be sold in a quiet and orderly manner. *In works of necessity or charity is included whatever is needful during the day* for good order, health, or comfort of the community, including the usual shoe shining service; *but keeping open a barber shop or shaving and hair cutting shall not be deemed works of necessity or charity, and nothing in this section shall be construed to permit the selling of uncooked meats, groceries, clothing, boots, or shoes.* The games of baseball, football, hockey, basketball, golf, soccer and other contests of athletic skill when conducted in a quiet and orderly manner so as not to interfere with the peace, repose, and comfort of the community, may be played on the Sabbath day." (Italics supplied.)

§ 168.275 prohibits engaging "in the business of buying, selling, exchanging, dealing in or trading in new or used motor vehicles" or "open[ing] any place of business or lot" for such purpose on Sunday, with no option for an alternative day of closing. The penalty for violation includes both criminal penalties and revocation of licenses, § 168.276.

§ 221.191 prohibits the operation of commercial trucks within prescribed distances from cities of the first class during prescribed hours on Sundays and holidays; but authorizes exceptions for certain farm trucks, trucks having a capacity of a ton or less, haulers of livestock and perishable products,

1961, contemporaneous with the advent of major league professional sports in this state, and stated its basic objective of "peace, repose, and comfort of the community." [24] The penalty for violation of the general statute, with the exceptions noted, is "a fine of not less than $1 nor more than $10" or "imprisonment in the county jail for not more than five days." [25] However anachronistic these traditional Sunday closing laws may appear to be, they are, as Mr. Justice Frankfurter observed, "as contemporary as their latest-enacted exceptions." [26]

Second, statutes closely comparable to our statutes, both in text and context, exist in other states and were held constitutionally valid by the United States Supreme Court in four landmark decisions in 1961, which we will call the "Sunday Closing Cases": McGowan v. Maryland, 366 U. S. 420, 81 S. Ct. 1101, 6 L. ed. (2d) 393; Two Guys from Harrison-Allentown, Inc. v. McGinley, 366 U. S. 582, 81 S. Ct. 1135, 6 L. ed. (2d) 551; Braunfeld v. Brown, 366 U. S. 599, 81 S. Ct. 1144, 6 L. ed. (2d) 563; and Gallagher v. Crown Kosher Super Market, 366 U. S. 617, 81 S. Ct. 1122, 6 L. ed. (2d) 536.[27] The most comparable of the statutes is that of Pennsylvania, which was sustained in the

---

trucks used for distribution of newspapers, vehicles used in highway construction, and various emergency motor vehicles, including those of public utilities.

Meals served upon the premises or elsewhere by caterers have long been permitted under these statutes. L. 1967, c. 691, now authorizes local option to permit the sale of intoxicating beverages during certain hours in certain hotels and restaurants in conjunction with the serving of food.

The general statute is additionally supplemented in effect by numerous opinions of the attorney general, as well as decisions of this court, construing it, a collation of which would serve no useful purpose.

[24] L. 1961, c. 732, amended the general statute to permit "football, hockey, basketball, golf, soccer and other contests of athletic skill" to be played on Sunday. Only the game of baseball had theretofore been permitted. No amendment was made, however, to remove a specific prohibition against Sunday boxing. § 341.07.

[25] Minn. St. 624.03.

[26] McGowan v. Maryland, 366 U. S. 420, 497, 81 S. Ct. 1101, 1173, 6 L. ed. (2d) 393, 439 (concurring opinion).

[27] Sunday closing legislation, as Federal legislation, was just as recently sustained in Canada in the leading case of Robertson v. The Queen, 41

McGinley case against objections similar to those in the instant case, except that the objection as to unconstitutional vagueness was not directly presented.

The "whole body of Pennsylvania Sunday Laws," in the words of the United States Supreme Court (366 U. S. 586, 81 S. Ct. 1137, 6 L. ed. [2d] 555), consisted of a basic statute generally prohibiting "all worldly employment, business and sports" on Sunday, with a general exception for "[w]orks of necessity and charity" and with specific exceptions for "wholesome recreation (defined as golf, tennis, boating, swimming, bowling, basketball, picnicking, shooting at inanimate targets and similar healthful or recreational exercises and activities) and work in connection with the rendering of service by a public utility." 366 U. S. 585, 81 S. Ct. 1137, 6 L. ed. (2d) 554. Other statutes prohibited such activities as operating a pool room, conducting boxing or wrestling matches, harness racing, pawnbrokering, netting fish in the Delaware River, dog-retrieving contests, and extension education in public schools. Expressly permitted were such activities as baseball, football, and polo during stated hours; public concerts, "of music of high order though not necessarily sacred," after a stated hour (366 U. S. 587, 81 S. Ct. 1138, 6 L. ed. [2d] 555); fishing from public lands or in public waters; exhibition of motion pictures after a stated hour, if approved by local option; the delivery of milk "or the necessaries of life" during certain hours (366 U. S. 585, 81 S. Ct. 1137, 6 L. ed. [2d] 554); and the on-sale service of alcoholic beverages in private clubs and, during stated hours, in hotel restaurants in certain cities, if approved by local option. A separate statute prohibited the Sunday sale of motor vehicles. The penalty for violation of the basic statute was a fine of $4 or imprisonment for 6 days. Violation of statutes prohibiting certain acts entailed varying penalties—e.g., violation of the prohibition against barbering entailed license revocation, and violation of the prohibition against selling motor vehicles entailed penal sanctions substantially more severe than for violations of the general statute. By an amendatory statute supplementing the basic statute,

D. L. R. (2d) 485, but on the different grounds discussed in Barron, *Sunday in North America,* 79 Harv. L. Rev. 42.

Pennsylvania prohibited, subject to sanctions comparable to those in the motor vehicle statute, the Sunday sale at retail of the following commodities (18 Purdon's Pa. Stat. Ann. Title 18, § 4699.10):

Clothing and wearing apparel, clothing accessories, furniture, housewares, home, business or office furnishings, household, business or office appliances, hardware, tools, paints, building and lumber supply materials, jewelry, silverware, watches, clocks, luggage, musical instruments and records, and toys, excluding novelties and souvenirs.

The Pennsylvania statute contained no provision granting an alternative day of closing for Sabbatarians.[28]

The Maryland statute, sustained in McGowan, generally prohibited the sale of merchandise on Sunday but, by amendment, made exception for the retail sale of tobacco products, confectioneries, milk, bread, fruits, gasoline, oils, greases, drugs and medicines, and newspapers and periodicals. It was amended to except from the general prohibition the retail sale in Anne Arundel County of all foodstuffs, automobile and boating accessories, toilet goods, flowers, hospital supplies, and souvenirs. The statute, as noted by the United States Supreme Court, also exempted "for Anne Arundel County, the Sunday operation of any bathing beach, bathhouse, dancing saloon and amusement park, and activities incident thereto and retail sales of merchandise customarily sold at, or incidental to, the operation of the aforesaid occupations and businesses." 366 U. S. 423, 81 S. Ct. 1104, 6 L. ed. (2d) 397. The remaining statutory provisions, in the words of Mr. Chief Justice Warren, "concern a myriad of exceptions for various counties, districts of counties, cities and towns throughout the State" (366 U. S. 424, 81 S. Ct. 1104, 6 L. ed. [2d] 398) including various exceptions "for the Sunday sale of different kinds of alcoholic beverages, at different hours during the day, by vendors holding different types of licenses." 366 U. S. 423, 81 S. Ct. 1104, 6 L. ed. (2d) 397.[29]

---

[28] This aspect of the statute was considered in the Braunfeld case, as was an analogous Massachusetts statute in the Crown Kosher Super Market case, both relating to the First Amendment's guaranties concerning religion.

[29] The Massachusetts statute, sustained in the Crown Kosher Super Market

2. We hold, on the controlling authority of the United States Supreme Court in the Sunday Closing Cases, that the state has broad constitutional power to establish a common day of rest, repose, recreation, and tranquillity; and we hold on the same authority that the exercise of that power in the instant case does not offend against the First Amendment.[30] Mr. Chief Justice Warren, speaking for the court, said in Braunfeld v. Brown, 366 U. S. 599, 607, 81 S. Ct. 1144, 1148, 6 L. ed. (2d) 563, 569:

"* * * [W]e cannot find a State without power to provide a weekly respite from all labor and, at the same time, to set one day of the week apart from the others as a day of rest, repose, recreation and tranquillity — a day when the hectic tempo of everyday existence ceases and a more pleasant atmosphere is created, a day which all members of the family and community have the opportunity to spend and enjoy together, a day on which people may visit friends and relatives who are not available during working days, a day when the weekly laborer may best regenerate himself. This is particularly true in this day and age of increasing state concern with public welfare legislation."

And he added in McGowan v. Maryland, 366 U. S. 420, 445, 81 S. Ct. 1101, 1115, 6 L. ed. (2d) 393, 410:

"* * * To say that the States cannot prescribe Sunday as a day of rest for these purposes solely because centuries ago such laws had their genesis in religion would give a constitutional interpretation of hostility to the public welfare * * *."

Mr. Justice Frankfurter, concurring, drew forcefully upon the English and American historical background of such legislation (366 U. S. 482, 496, 81 S. Ct. 1165, 1173, 6 L. ed. [2d] 431, 439):

"* * * [T]he English experience demonstrates the intimate relationship between civil Sunday regulation and the interest of a state

---

case, contained provisions analogous to the Maryland and Pennsylvania statutes.

[30] The Sunday Closing Cases, moreover, confirm a like decision of this court 70 years ago in State v. Petit, 74 Minn. 376, 77 N. W. 225, affirmed sub nom. Petit v. Minnesota, 177 U. S. 164, 20 S. Ct. 666, 44 L. ed. 716.

in preserving to its people a recurrent time of mental and physical recuperation from the strains and pressures of their ordinary labors. * * * Long before the emergence of modern notions of government, religion had set Sunday apart. Through generations, the people were accustomed to it as a day when ordinary uses ceased. * * * Through associations fostered by tradition, that day had a character of its own which became in itself a cultural asset of importance * * *.

* * * * *

"* * * Although some [of the statutes of forty-nine states] are still built upon the armatures of earlier statutes, they are all * * * recently reconsidered legislation. As expressions of state policy, they must be deemed as contemporary as their latest-enacted exceptions in favor of moving pictures or severer bans of Sunday motor vehicle trading. In all, they reflect a widely felt present-day need, for whose satisfaction old laws are shaped and new laws enacted."

The specific deprivation of religious liberty asserted in the instant case is that a person who is a Sabbatarian is given the alternative of closing *completely* on Saturday, whereas a person who either observes Sunday or no day as a religious Sabbath may operate all day Saturday *and* also on Sunday for the sale of restricted items.[31] We would hold against this argument upon the authority of the Sunday Closing Cases, for the Pennsylvania and Massachusetts statutes were there sustained even though no option whatever was given to Sabbatarians.[32]

---

[31] This argument assumes an affirmative answer to the question of whether commodities not classified as restricted are now relieved of the preexisting prohibition under the general statute. We assume it, too, only for the present purpose of deciding this issue.

[32] The only issue that caused substantial division in the United States Supreme Court in the Sunday Closing Cases was that of religion. Mr. Justice Douglas dissented on such grounds in all four cases. Mr. Justice Brennan and Mr. Justice Stewart dissented on those grounds only in the Braunfeld and Crown Kosher Super Market cases, where the issue was of direct concern to Jewish Orthodox merchants who could suffer a grave economic burden in complying with a religious command to close on Saturday and a civil command to close on Sunday. Mr. Justice Frankfurter would have

Mr. Chief Justice Warren stated in the Braunfeld case (366 U. S. 607, 81 S. Ct. 1148, 6 L. ed. [2d] 568):

"* * * [I]f the State regulates conduct by enacting a general law within its power, the purpose and effect of which is to advance the State's secular goals, the statute is valid despite its indirect burden of religious observance unless the State may accomplish its purpose by means which do not impose such a burden."

Mr. Justice Frankfurter in a concurring opinion in the Sunday Closing Cases specifically considered the proposed alternatives of permitting the commercial enterprise its own choice of closing day or providing some other common day wholly without religious significance to any person, but concluded (366 U. S. 506, 81 S. Ct. 1178, 6 L. ed. [2d] 444) that "in all fairness, certainly, it would be impossible to call unreasonable a legislative finding that these suggested alternatives were unsatisfactory."

The statute in this case reflects a legislative attempt to alleviate the indirect religious burden upon Sabbatarians by granting those merchants a restriction-free Sunday if they close on Saturday, while at the same time requiring no religious declaration for the exercise of that right. It may not be a perfect solution to a complex problem, but we must conclude that the statute is not constitutionally defective on that ground.

3. We reject, as we must, the contention that, although the legislature's purpose was secular, it nevertheless was not a public purpose—rather the purpose was to invidiously discriminate against suburban merchants for the private and economic advantage of downtown merchants.

We may judicially notice, as did the United States Supreme Court,

---

remanded in the Braunfeld case but only because there, as here, the constitutional issue was presented without an evidentiary hearing, noting (366 U. S. 543, 81 S. Ct. 1198, 6 L. ed. [2d] 466): "However difficult it may be for appellants to prove what they allege, they must be given an opportunity to do so * * *." Insofar as the court spoke to other issues directly presented in the instant case, it was the voice of a decisive majority.

that the advent of such legislation in other states coincided in time with the developing phenomenon of the suburban discount department store, but that notices no more than that the legislature could in its judgment find that restrictions enforced with more severe sanctions were needed to cope with mounting interruption of the rest and repose of the community.[33] We think that our legislature, acting in reliance upon the precedent of these states, likewise undertook by more enforceable sanctions to add department stores to the list of commercial establishments that close on Sunday. We think, too, that the legislature could notice that—whether by honoring the general statute, by observing community custom, or by complying with collective bargaining agreements in the industries of the metropolitan area—there was minimal Sunday commercial activity other than the spreading practice of retail merchandising on Sunday. We may judicially notice, furthermore, the significant fact that the statute was enacted at the session of the legislature which next followed this court's 1966 decisions sustaining similar legislation in ordinances of the Hennepin County suburban municipalities of Richfield and Bloomington,[34] which in turn were doubtless

[33] In the McGinley case, the following finding of the three-judge Federal District Court concerning the Pennsylvania statute was adopted by the court (366 U. S. 590, 81 S. Ct. 1139, 6 L. ed. [2d] 557): "* * * [T]he 1939 closing law was observed by most retail sellers in Lehigh County, though not all, who were subject to its provisions, until the very recent opening of substantial suburban retail businesses like that of the plaintiff initiated and triggered new and rather large scale violations, and threats of others . . . [and] that the small four dollar penalty of the earlier law was inadequate to deter the Sunday opening of large retail establishments which could easily absorb such small fines as an incidental cost of doing a profitable business." Mr. Justice Roberts, concurring in the recent case of Bertera's Hopewell Foodland, Inc. v. Masters, 428 Pa. 20, 56, 236 A. (2d) 197, 216, stated the same thing: "Admittedly, the statute * * * was carefully drafted to include those items usually sold by large discount department stores whose business activities on Sunday did indeed disrupt the peace and tranquillity normally associated with our day of rest."

[34] G. E. M. of St. Louis, Inc. v. City of Bloomington, 274 Minn. 471, 144 N. W. (2d) 552, and Mangold Midwest Co. v. Village of Richfield, 274 Minn. 347, 143 N. W. (2d) 813.

based upon the teaching of the 1961 Sunday Closing Cases. To judicially notice, however, that suburban Richfield and Bloomington officials were motivated by any desire or purpose to discriminate against their own merchants for the benefit of the downtown Minneapolis merchants would be judicially naive.[35]

It is well settled that we cannot judicially notice legislative motive. Mr. Justice Frankfurter reiterated in the Sunday Closing Cases that "the private and unformulated influences which may work upon legislation are not open to judicial probing." [36] Even if it were proved, let alone merely asserted, that representatives of downtown merchants drafted the original bill or "lobbied" for its passage, it would not be determinative, as the opinion of the late Chief Justice Vanderbilt made strikingly clear in Gundaker Central Motors v. Gassert, 23 N. J. 71, 83, 127 A. (2d) 566, 573:

"While it is true that if the dominant purpose of the legislation be to serve private interests under the cloak of the general public good, the resulting legislation is a perversion and abuse of power and therefore unlawful * * *, the only real basis for the assertion of such a motive here is in the [factually proved] sponsorship of the legislation in question [by the New Jersey Automotive Trade Association]. But the motives of the sponsors cannot be imputed to the Legislature unless there is basis for it in its statutory expression. * * * We find no legal basis for attributing any desire on the part of the Legislature to act other than in the general public interest."

The same result would obtain were we to make the not unreasonable assumption that some legislators may have been motivated by a personal religious commitment to the Sabbath Commandment (Exodus

---

[35] It is not without significance that the main authors of the legislation represented districts other than cities of the first class. Legislators voting for the bill included legislators from both core city and suburban legislative districts as well as outstate districts; and this was true also of those voting against the bill.

[36] 366 U. S. 469, 81 S. Ct. 1158, 6 L. ed. (2d) 424. See, also, Starkweather v. Blair, 245 Minn. 371, 379, 71 N. W. (2d) 869, 875.

20: 8-11). We "ought [not]," in any event, "to proceed upon the theory that its action is a mere sham." [37]

4. A contention of more substance is that, notwithstanding the constitutionality of its purpose, the statute is structured so irrationally that it does not accomplish that purpose but, instead, arbitrarily denies to retail merchants the equal protection of the laws. The statute does have potential incongruities and at least marginal situations of inequality, stemming both from its classifications of restricted commodities and its exemption as to stated selling activities, particularly if we were to conclude that this is now the only statute regulating commercial activity on Sunday.[38]

We do not, for several reasons, declare the statute invalid on these grounds. First, comparable assaults were made against the statutes of Pennsylvania and Maryland in the Sunday Closing Cases and were rejected by the United States Supreme Court. The argument in the McGinley case, summarized in the words of the court, was that the statute denied equal protection because (366 U. S. 589, 81 S. Ct. 1139, 6 L. ed. [2d] 557)—

"* * * without rational basis, the statute singles out only twenty specified commodities, the Sunday sale of which is penalized [by substantial sanctions]; and also because the statute's proscription extends only to retail sales. * * * [T]o forbid the Sunday sale of only some items while permitting the sale of many others and to exclude only retailers from Sunday operation while exempting wholesalers, service dealers, factories, and those engaged in the other excepted activities

---

[37] Lochner v. New York, 198 U. S. 45, 73, 25 S. Ct. 539, 550, 49 L. ed. 937, 948 (dissenting opinion).

[38] Among the incongruities suggested by defendant Target and amicus Shoppers City, *if* this is the only statute prohibiting retail sale of commodities: One could purchase a movie projector, but not a camera; toys, but not musical instruments; books, but not infant wear; motorcycles, but not lawn clippers; pets, but not television sets; guns, but not furniture; sheet music, but not records; blankets, but not beds; auto supplies, but not hardware; purses, but not luggage; pottery, but not clocks; toiletries, but not jewelry. The contention that this statute impliedly repealed all other Sunday closing legislation is, however, considered later in this opinion.

defeats the State's alleged interest of providing a day of rest and tranquillity for all." [39]

Mr. Chief Justice Warren's language in disposing of these contentions in the McGowan case likewise applies in the disposition of most such claims asserted in the instant case (366 U. S. 425, 81 S. Ct. 1105, 6 L. ed. [2d] 399):

"* * * [T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

Regarding the commodity concept of fixing the extent of Sunday closing in the Maryland statute, a concept also used in the Pennsylvania statute, the Chief Justice wrote in the McGowan case (366 U. S. 426, 81 S. Ct. 1105, 6 L. ed. [2d] 399):

"It would seem that a legislature could reasonably find that the Sunday sale of the exempted commodities was necessary * * * for the enhancement of the recreational atmosphere of the day * * *.

---

[39] Two states have recently held commodity-approach statutes unconstitutional on similar grounds: Terry Carpenter, Inc. v. Wood, 177 Neb. 515, 129 N. W. (2d) 475, and Hughes v. Reynolds, 223 Ga. 727, 157 S. E. (2d) 746; but, notably, neither case made any mention of the Sunday Closing Cases, except for one passing citation in the Wood case. Two states, persuaded by the Sunday Closing Cases, recently sustained their statutes against such attack: Mandell v. Haddon, 202 Va. 979, 121 S. E. (2d) 516, and State v. Fantastic Fair & Karmil, 158 Maine 450, 186 A. (2d) 352; but it may be noted that the statute in Virginia more nearly conformed to the model Common Day of Rest Act. In the recent case of Bertera's Hopewell Foodland, Inc. v. Masters, 428 Pa. 20, 236 A. (2d) 197, the Pennsylvania Supreme Court again sustained its statute, although the court was divided as to whether a particular section of the statute, not in point here, was either unconstitutionally discriminatory or void for vagueness.

"The record is barren of any indication that this apparently reasonable basis does not exist, that the statutory distinctions are invidious, that local tradition and custom might not rationally call for this legislative treatment. * * * Likewise, the fact that these exemptions exist and deny some vendors and operators the day of rest and recreation contemplated by the legislature does not render the statutes violative of equal protection since there would appear to be many valid reasons for these exemptions, as stated above, and no evidence to dispel them."

As to the exemption of certain merchants even with respect to restricted commodities, he continued (366 U. S. 427, 81 S. Ct. 1106, 6 L. ed. [2d] 400):

"* * * [A] legislature could reasonably find that these commodities, necessary for the health and recreation of its citizens, should only be sold on Sunday by those vendors at the locations where the commodities are most likely to be immediately put to use. Such a determination would seem to serve the consuming public and at the same time secure Sunday rest for those employees [like McGowan employees] of all other retail establishments. In addition, the enforcement problems which would accrue if large retail establishments [like McGowan's large discount department store] were permitted to remain open on Sunday but were restricted to the sale of the merchandise in question would be far greater than the problems accruing if only beach and amusement park vendors were exempted. Here again, there has been no indication of the unreasonableness of this differentiation."

Mr. Justice Frankfurter illuminated the controlling principles in his extended concurring opinion to all four Sunday Closing Cases. He observed generally (366 U. S. 524, 531, 81 S. Ct. 1188, 1192, 6 L. ed. [2d] 455, 459):

"In the case of Sunday legislation, an extreme complexity of needs is evident. This is so, first, because one of the prime objectives of the legislation is the preservation of an atmosphere—a subtle desideratum, itself the product of a peculiar and changing set of local circumstances and local traditions. But in addition, in the achievement of that end, however

formulated, numerous compromises must be made. * * * Many activities have a double aspect: providing entertainment or recreation for some persons, they entail labor and workday tedium for others. * * *

* * * * *

"* * * Certainly, when relevant considerations of policy demand decisions and distinctions so fine, courts must accord to the legislature a wide range of power to classify and to delineate. * * * [T]he very diversity of judicial opinion as to what is reasonable classification—like the conflicting views on what is such 'necessity' as will justify Sunday operations—testifies that the question of inclusion with regard to Sunday bans is one where judgments rationally differ, and hence where a State's determinations must be given every fair presumption of a reasonable support in fact."

Specifically considering the fact that the statutory structure prohibits the sale of goods generally but simply imposes more severe sanctions for the sale of selected commodities classified as "restricted," he wrote (366 U. S. 541, 81 S. Ct. 1197, 6 L. ed. [2d] 465):

"* * * It applies not only to [a new kind of large-scale mercantile enterprise]—if that were so, quite obviously, different constitutional problems would arise. Rather it singles out the area where a danger has been made most evident, and within that area treats all business enterprises equally. That in so doing it may have drawn the line between the sale of a sofa cover, punished by a hundred-dollar fine, and the sale of an automobile seat cover, punished by a four dollar fine, is not sufficient to void the legislation. '[A] State may classify with reference to the evil to be prevented, and . . . if the class discriminated against is or reasonably might be considered to define those from whom the evil mainly is to be feared, it properly may be picked out. A lack of abstract symmetry does not matter. The question is a practical one dependent upon experience. The demand for symmetry ignores the specific difference that experience is supposed to have shown to mark the class. It is not enough to invalidate the law that others may do the same thing and go unpunished, if, as a matter of fact, it is found that the danger is characteristic of the class named.' Mr. Justice

Holmes, in Patsone v. Pennsylvania, 232 U. S. 138, 144 [34 S. Ct. 281, 282, 58 L. ed. 539, 543].

"Even less should a legislature be required to hew the line of logical exactness where the statutory distinction challenged is merely one which sets apart offenses subject to penalties of differing degrees of severity, not one which divides the lawful from the unlawful."

As for the asserted discrimination in exemptions of the Sunday sale of restricted commodities *on* the premises of public recreation areas, he said (366 U. S. 538, 81 S. Ct. 1195, 6 L. ed. [2d] 462):

"* * * [T]he answer must be that between such beach-side enter- prisers and the general suburban merchandising store * * * there is a reasonable line of demarcation. The reason of the exemption dictates the human logic of its scope."

Similar claims of discrimination are raised as to the exemptions in this statute. Additionally challenged are the exemptions for *off*-the- recreational-premises sales of merchandise by seasonal vendors;[40] or sales of merchandise for any purpose, either as isolated sales from a residence by individuals who are not dealers[41] or as once-a-year sales at state or county fairs by persons who *are* dealers.[42] These questions were not specifically asked in the Sunday Closing Cases. We think, how- ever, that the rationale of the cases is sufficient to answer that, as to isolated residential sales, the claim is trivial and, as to any other exemptions in the statute, the claims, although more substantial, are not substantial enough to invalidate the statute.[43]

Second, a question as to whether a statute is constitutional is dis- tinctly different from a question as to whether it is wise legislative policy. "[O]ur concern," as Mr. Chief Justice Warren acknowledged in the Braunfeld case, "is not with the wisdom of legislation but with

[40] § 4(6) of the Act.

[41] § 4(1) of the Act.

[42] § 4(7) of the Act.

[43] These conceivably were found by the legislature to be of benefit in the accommodation of our state's tourists, a consideration found relevant in State v. Fantastic Fair & Karmil, 158 Maine 450, 186 A. (2d) 352.

its constitutional limitation."[44] Lochner v. New York, 198 U. S. 45, 25 S. Ct. 539, 49 L. ed. 937, is a celebrated case involving an early New York statute which prohibited employing bakery employees to work more than 10 hours a day. The statute was at that time held unconstitutional, with four justices dissenting. Mr. Justice Holmes, dissenting, said (198 U. S. 75, 25 S. Ct. 546, 49 L. ed. 949):

"* * * It is settled by various decisions of this court that state constitutions and state laws may regulate life in many ways which we as legislators might think as injudicious or if you like as tyrannical as this, and which equally with this interfere with the liberty to contract. Sunday laws and usury laws are ancient examples. * * *

"* * * I think that the word liberty in the Fourteenth Amendment is perverted when it is held to prevent the natural outcome of a dominant opinion, unless it can be said that a rational and fair man necessarily would admit that the statute proposed would infringe fundamental principles as they have been understood by the traditions of our people and our law."

Mr. Justice Harlan, joined by Mr. Justice White and Mr. Justice Day, said also in dissent (198 U. S. 68, 25 S. Ct. 548, 49 L. ed. 946):

"* * * If there be doubt as to the validity of the statute, that doubt must therefore be resolved in favor of its validity, and the courts must keep their hands off, leaving the legislature to meet the responsibility for unwise legislation. If the end which the legislature seeks to accomplish be one to which its power extends, and if the means employed to that end, although not the wisest or best, are yet not plainly and palpably unauthorized by law, then the court cannot interfere. In other words, when the validity of a statute is questioned, the burden of proof, so to speak, is upon those who assert it to be unconstitutional. McCulloch v. Maryland, 4 Wheat. 316, 421 [4 L. ed. 579, 605]."

Third, as stated in the foregoing quotation, a statute is presumptively constitutional. This court said in Minneapolis Federation of Teachers v. Obermeyer, 275 Minn. 347, 356, 147 N. W. (2d) 358, 365:

---

[44] 366 U. S. 608, 81 S. Ct. 1148, 6 L. ed. (2d) 569.

"* * * [W]e are committed to the principle that unless a law is unconstitutional beyond a reasonable doubt, it must be sustained. The burden of proof in this respect is on the party seeking to set the law aside."

5. We hold, nevertheless, that the statute is so vague and uncertain in its statutory scheme and criminal consequence as to violate the due process clause of the Fourteenth Amendment. The vagueness is inherent both in the way this statute is structured upon the restricted-commodity concept and in the relationship of this statute, with its specific prohibitions, to the general statute, with its general prohibitions, against the sale of goods on Sunday.

We consider, first, that the vagueness and uncertainty in the designation of restricted commodities does not afford clear warning to a potential defendant of conduct which may result in severe penal sanctions under this specific statute. The classifications of restricted commodities, it appears from the record in the Shoppers City case, neither include all commodities sold in a department store nor constitute a definitive test for ascertaining which of the thousands of items carried for sale in such stores are actually "restricted." [45] Three practical examples of ambiguity, among several suggested by Target and Shoppers City, are illustrative: (a) A merchant might well be in doubt whether portable outdoor barbecue grills, with or without motor-driven rotisserie units, are either unrestricted or are restricted as being within such classifications as "home appliances," "furniture and other home furnishings," or "lawn mowers and other power driven or manually operated outdoor machinery and equipment"; (b) it is clear that "phonographs and tape recorders" are a restricted classification, but whether the legislature intended to restrict such related commodities as a replacement phonograph needle or the sale of component parts from which to assemble a "hi-fi" set is uncertain; and (c) it required

---

[45] It appears from the record in the Shoppers City case that Shoppers City stocks more than 100,000 different items. It is asserted without challenge in Target's brief that it stocks "countless commodities," with new kinds frequently appearing on the market.

a formal opinion of the attorney general [46] to settle, in the negative, a city attorney's question as to whether blankets were restricted as "home furnishings."

Greater certainty than this statute affords is essential because, as the state would concede, the distinction in the degree of criminality for purposes of punitive sanctions is based upon the distinction in commodities; and, as the defendants would argue, distinctions in commodities would distinguish even between criminal and noncriminal acts.[47] Although we have for different reasons rejected the contention that the statute is too irrational to achieve the legislative objective, we observe that the statutory scheme is not such as will aid in more certainly ascertaining the restricted character of a commodity.

This precise issue was not squarely considered in the Sunday Closing Cases.[48] The issue was raised in a narrower context in the

---

[46] Opinion Attorney General, No. 1002, July 18, 1967.

[47] The defendant who must be able to make these distinctions is not alone the expert merchandiser of a major department store. In the Shoppers City case, for example, one defendant was the corporate president, who gave extensive testimony concerning the nature of a department store and its practical problem of compliance with this statute. It is a problem, too, for an employee who is no more expert than a checkout cashier. In the instant case an employee of undisclosed status was a defendant and an employee was an additional defendant in the Shoppers City case. And it may equally be a problem, although of a different order, for the public authorities who must enforce the statute.

[48] The definiteness of the several commodity classifications in the Pennsylvania statute were not challenged. There are some differences in the commodity classifications between the Minnesota and Pennsylvania statute. The Pennsylvania statute has classifications not stated in the Minnesota statute, namely: "[H]ousewares, * * * business or office furnishings, * * * [and] appliances, * * * silverware, * * * toys, excluding novelties and souvenirs"; and vice-versa, namely: Cameras, footwear, phonographs, tape recorders, radio receivers, television receivers, floor coverings, wallpaper and varnishes, furs, and lawn mowers and other power driven or manually driven outdoor machinery and equipment. Some of these may be explainable as differences in nomenclature only. Yet, other differences do nevertheless contribute to ambiguity, e. g., are "housewares," omitted in the Minnesota statute, to be included in "other home furnishings" or "home appliances"? The

McGowan case but was decided on a basis that does not control decision here. In McGowan, the defendants attacked the exemption for the sale of "merchandise essential to, or customarily sold at, or incidental to" the operation of recreational areas. The *holding* of the United States Supreme Court was merely that the contention had not been raised in the lower court and accordingly was not reviewable. Mr. Chief Justice Warren did offer the following dictum (366 U. S. 428, 81 S. Ct. 1106, 6 L. ed. [2d] 400):

"* * * We believe that business people of ordinary intelligence in the position of [the department store] would be able to know what exceptions are encompassed by the statute either as a matter of ordinary commercial knowledge or by simply making a reasonable investigation at a nearby bathing beach or amusement park within the county."

The issue in the instant case more generally requires that we consider the whole range of commodities in a department store. Although we, too, believe that a responsible department store official would be able to determine the classification of many, probably most, commodities, we have been disabused of the belief that there are not numerous other commodities which cannot with certainty be so classified.[49]

---

reference to "souvenirs" in the Pennsylvania statute is itself ambiguous, State v. Fantastic Fair & Karmil, 158 Maine 450, 186 A. (2d) 352, so the Minnesota statute is more certain in that respect.

[49] Some Sunday selling statutes have been held unconstitutionally vague where "articles of immediate necessity" are exempt from the general prohibition. See, State v. Hill, 189 Kan. 403, 369 P. (2d) 365, 91 A. L. R. (2d) 750; G I Surplus Store, Inc. v. Hunter, 257 N. C. 206, 125 S. E. (2d) 764; Harvey v. Priest (Mo.) 366 S. W. (2d) 324. We cite these cases as illustrative of a principle, rather than as decisively in point, for we recognize that general words, such as "necessity," have often been held by usage to be adequately ascertainable in meaning and therefore adequately unambiguous. See, Note, 43 N. C. L. Rev. 123, 142 to 144. The designation of restricted commodities may, of course, be made definitive of "necessity." See, Petit v. Minnesota, 177 U. S. 164, 20 S. Ct. 666, 44 L. ed. 716, affirming State v. Petit, 74 Minn. 376, 77 N. W. 225, and Mandell v. Haddon, footnote 39, *supra*. We do not read the statute in the instant case, however, as

The United States Supreme Court declared the essential constitutional principle as follows in Connally v. General Const. Co. 269 U. S. 385, 391, 46 S. Ct. 126, 127, 70 L. ed. 322, 328:

"* * * [A criminal] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." [50]

Our own decisions, reiterating that principle, have applied the rule of reason as to what degree of certainty is required. It was stated thus in practical terms in State v. McCorvey, 262 Minn. 361, 365, 114 N. W. (2d) 703, 706:

"A criminal statute must be definite enough to give notice of the conduct required to anyone who desires to avoid its penalties; it must be sufficiently definite to guide the judge in its application and the attorney in defending a person charged with its violation. No more than a reasonable certainty can be demanded."

Statutes punishing conduct inherently antisocial, dangerous, or immoral in character necessarily must and can be framed in broad terms.[51] But where a statute imposes penal sanctions for specific acts not of such character, more specific definition and clarity is demanded.[52]

meeting such saving criteria. We do not say, either, that *every* commodity classification in our statute is vague or that the existence of merely marginal situations would nullify a statute. See, State v. Hill, *supra*, and see, also, State v. Northwest Poultry & Egg Co. 203 Minn. 438, 281 N. W. 753, *infra*. What we do hold, in essence, is that the aggregate of ambiguities in this statute is too substantial to stand the requisite test of certainty.

[50] See, also, Lanzetta v. New Jersey, 306 U. S. 451, 59 S. Ct. 618, 83 L. ed. 888; United States v. Cardiff, 344 U. S. 174, 73 S. Ct. 189, 97 L. ed. 200; United States v. Harris, 347 U. S. 612, 74 S. Ct. 808, 98 L. ed. 989; Bouie v. City of Columbia, 378 U. S. 347, 84 S. Ct. 1697, 12 L. ed. (2d) 894.

[51] See, State v. Eich, 204 Minn. 134, 282 N. W. 810; State v. Suess, 236 Minn. 174, 52 N. W. (2d) 409; State v. Reynolds, 243 Minn. 196, 66 N. W. (2d) 886; State v. McCorvey, 262 Minn. 361, 114 N. W. (2d) 703.

[52] See, State v. Parker, 183 Minn. 588, 237 N. W. 409; State v. North-

In State v. Northwest Poultry & Egg Co. 203 Minn. 438, 281 N. W. 753, for example, this court invalidated a penal statute which required purchasers of certain farm products for manufacture or resale to deduct from the purchase price paid the "actual cost of transportation by wagon or truck" from the point of purchase to the locality of manufacture or sale, but the statute did not define either the elements to be considered in determining "actual cost" or the method of apportionment where several purchases were made at varying distances from the point of manufacture or sale. Even though it was urged that experts, such as cost accountants, could determine those facts and that the orderly process of litigation would give it ultimate certainty, this court held the statute was unconstitutionally vague. Mr. Chief Justice Henry Gallagher there wrote (203 Minn. 439, 281 N. W. 754):

"* * * The legislature is vested with a large measure of discretion, bounded by constitutional restraints, in declaring and defining rules of conduct. But penalties for their infraction will be inflicted only if a guide is established by which those subject to their force may with reasonable certainty assess the consequences of contemplated conduct. * * * It is essential to due process that the terms of a penal statute creating a new offense plainly inform those upon whom it operates where the line of duty is drawn and what the law will do if it is overpassed. * * * If it requires or forbids in terms so vague that men of common intelligence must guess at its meaning and differ as to its application, it is void for uncertainty."

6. We consider, second, the vagueness resulting from the uncertain relationship of this statute to the general statute. A substantial question is raised by defendants as to whether the legislature, by the enactment of this statute, impliedly repealed all other statutes on the subject of Sunday closing. If the answer were in the affirmative, an element of vagueness might vanish, but it would have the effect of undergirding the premise for defendants' other contentions that the statute then oper-

___

west Poultry & Egg Co. 203 Minn. 438, 281 N. W. 753; State v. Eich, 204 Minn. 134, 282 N. W. 810; Anderson v. Burnquist, 216 Minn. 49, 11 N. W. (2d) 776; State v. Kuluvar, 266 Minn. 408, 123 N. W. (2d) 699.

ates upon such few subjects as more seriously to question the legitimacy of the legislature's purpose or the rationality of its method for executing that purpose. It would, at the same time, undermine the analogy between the Minnesota and Pennsylvania statutes sustained in the Sunday Closing Cases. It would not, however, completely change our conclusion that the statute is vague and uncertain with respect to the commodity classifications as such.

We conclude that the legislature did not repeal any previously existing statutes either intentionally or by operation of law. Were we to hold otherwise, it would have the sweeping effect of abolishing statutes of long history and settled practice, so that only the sale, perhaps only the retail sale, of commodities defined as restricted would be prohibited. A manufacturing plant, a food supermarket, a used car lot, and any other commercial activity would be freed from statutory restraint. A store selling exclusively wearing apparel, or floor coverings, or wallpaper would be closed. A department store could be open to sell at least potentially a wide variety of commodities, the exact kinds and numbers of which are uncertain.[53] We find no manifestation whatever of a legislative intent to effect so revolutionary a change in the customary and statutory practices of the community. The legislature, as we have previously noted, more probably intended instead that by means of more severe sanctions department stores would be added to the commercial establishments which close on Sunday. The principle

---

[53] Commodities at least arguably unrestricted would include: Notions and toiletries; stationery, greeting cards, gift wrappings; automobiles, including automobile parts, accessories and supplies; pets and pet supplies; toys and games; hunting and sporting goods or other athletic equipment not constituting wearing apparel; all food and drug items; office furniture, fixtures and appliances; housewares, at least to the extent not classified as "home furnishings" or "home appliances"; many items of leather goods not classified either as "luggage" or "wearing apparel"; pictures, mirrors, and frames, at least if not classified as "furniture" and "other home furnishings"; flowers, including artificial flowers; household cleaners and cleaning supplies; and conceivably many other items either existing or newly arriving on the market and not included in the classes of restricted commodities.

of implied statutory repeal is not favored;[54] rather, as stated in State v. Sobelman, 199 Minn. 232, 236, 271 N. W. 484, 486:

"* * * Before it can be said that a later act is intended as a substitute for the earlier, 'there must be unmistakable intent manifested on the part of the legislature to make the new act a substitute for the old and to contain all the law on the subject; for mere similarity in the provisions of the two statutes is not enough to effect a repeal, even though the similarity may be such as to cause confusion or inconvenience.' "

A construction that will produce an unconstitutional result is similarly disfavored by the legislature.[55]

We are troubled even more by what ordinarily might be a probable implication that the statute superseded the prior general statute to the extent, and only to the extent, that the provisions are in irreconcilable conflict. Because classes of restricted commodities are enumerated with the provision that "[n]o person * * * shall * * * sell a restricted item in such establishment or part thereof, on Sunday," which are plain words of prohibition, it could, not unreasonably, be argued that the sale of commodities not within the restricted classifica-

---

[54] See, 17 Dunnell, Dig. (3 ed.) § 8927.

[55] See, Minn. St. 645.17(3).
An additional ambiguity exists as to whether the statute applies to sales of commodities at wholesale as well as retail. Unlike the Pennsylvania statute, the statute does not expressly state that it applies only to retail sales. The statute makes only one reference to "retail" sales on Sunday, exempting retail sales for recreational purposes by a vendor whose business is seasonal. Although this provision, added by amendment shortly prior to passage of the bill, may have been made inadvertently, merely reflecting its author's understanding that the statute applied only to retail sales, the contra-implication might be that it was understood that the statute generally applies to both wholesale and retail sales but that this specific exemption was necessary only for retail sales. Even though the Sunday Closing Cases made clear that the application of the statute only to retail sales would not violate the equal protection clause and even though this court could by construction settle this single uncertainty and avoid violation of the due process clause as to this single aspect, it is cumulative to the other uncertainties in the statutory scheme that we are unable thus to resolve by judicial construction.

tions was no longer to be prohibited. Such construction, moreover, would be consistent with the statute's several exceptions and exemptions as to the sale of even restricted commodities, for otherwise the legislature's removal of the more severe sanctions seemingly would be encouraging continued violations of the general statute's prohibition against the Sunday sale of those and most other commodities. Although these conflicting concepts are not comfortably reconciled on the basis that one statute simply supplements the other, we are not unaware that this, like the statutes of other states, was enacted because the general statute was, due to its minimal sanctions, simply not being enforced.

We find no such implication of limited repeal for two additional reasons: First, the vagueness we have found in the classification of restricted commodities would render equally vague the resulting area of unrestricted commodities and, hence, the extent of even such "irreconcilable conflict." An act will be declared void on the ground of vagueness and uncertainty, as we indicated in Wichelman v. Messner, 250 Minn. 88, 111, 83 N. W. (2d) 800, 819, 71 A. L. R. (2d) 816, if it is "so imperfect and deficient in its detail as to render it impossible of execution and enforcement, and is susceptible of no reasonable construction that will support it and give it effect." To make it even less vague by concluding that Sunday sales of any and all other goods were now exempt from prohibition would, we reiterate, unrealistically ascribe to the legislature an intent too sweeping in scope. Second, this court held in G. E. M. of St. Louis, Inc. v. City of Bloomington, 274 Minn. 471, 144 N. W. (2d) 552, and Mangold Midwest Co. v. Village of Richfield, 274 Minn. 347, 143 N. W. (2d) 813, that like legislation in municipal ordinances was *not* in conflict with the general statute but, rather, in harmony with it. There is good reason to believe, as we have indicated, that the legislature enacted this statute with reliance on this court's decision in those cases, which we deem of controlling significance for the present purpose of refuting an implication of repeal. The result of this potential conflict and confusion is such that the statutory scheme is in our opinion vague, uncertain, and unworkable.

7. We conclude, in order to avoid future uncertainty that would arise from the enactment of this invalid statute or from any ambiguous language in this or other opinions of this court, that the net result of today's decision is simply to restore the Sunday closing situation in Minnesota to exactly what it was before the enactment of L. 1967, c. 165. Nothing, in short, should be construed to make lawful any act that has been unlawful under any state statute existing prior to this nullified statute. Because the complaint in this case alleged only a violation of *this* statute and not the general statute, however, we do not remand but do affirm the order dismissing the complaint.

Affirmed.

_____

APPENDIX

L. 1967, c. 165, provides:

"Section 1. Subdivision 1. For the purpose of this act, the terms defined in this section shall have the meanings given them.

"Subd. 2. 'Person' means any individual, partnership, corporation, association, or other group, however organized, and includes agents and employees.

"Subd. 3. 'Sunday' means the first day of the calendar week.

"Subd. 4. 'Saturday' means the seventh day of the calendar week.

"Subd. 5. 'Holiday' means New Year's Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day and Christmas Day.

"Subd. 6. 'Sell' or 'selling' means making a sale, engaging in the business of selling, assisting in selling, attempting to sell, extending credit for a sale, and trading or exchanging merchandise, by personal contact between buyer and seller or by telephone or in any other manner. The terms 'sell' or 'selling' shall also include any lease or rental if, by the terms of the lease or rental agreement, title to a restricted item may pass by the exercise of an option by any party to such lease or rental agreement.

"Subd. 7. 'Restricted item' means any of the following: cameras;

musical instruments including pianos and organs; records and other recordings; phonographs and tape recorders; radio receivers and television receivers; jewelry; clocks and watches; furs; furniture and other home furnishings; home appliances; footwear; wearing apparel of all kinds; luggage; lawn mowers and other power driven or manually operated outdoor machinery and equipment; hardware and tools; paints, varnishes and wallpaper, and painting and wallpaper tools and supplies; lumber and other building materials and supplies; floor coverings.

"Sec. 2. No person shall sell a restricted item on Sunday or a holiday.

"Sec. 3. No person who is in charge of a business establishment, or a part thereof, whether as the owner, lessee, concessionaire, corporate director, officer, manager, supervisor, or otherwise, shall permit another person to sell a restricted item in such establishment or part thereof, on Sunday or a holiday.

"Sec. 4. It shall be a sufficient defense to prosecution under this act, that the sale involved was one of the following:

"(1) An isolated sale from a residence by a person not regularly engaged in selling the kind of merchandise sold.

"(2) The sale at any auditorium, stadium, bathing beach, golf course, ski area, bowling alley, marina, boat livery, or other park or playground of merchandise for use at the place of sale for recreational purposes.

"(3) The dispensing of any coupon, stamp or merchandise premium in conjunction and simultaneously with the sale of any merchandise the sale of which is not prohibited on Sunday or a holiday.

"(4) The advertisement for sale of any merchandise by any newspaper, radio or television station, or other established advertising medium.

"(5) The sale of restricted items on Sunday at a place of business which is regularly closed on Saturday and which was actually closed at all hours on the Saturday before the Sunday upon which such sale of restricted items occurs.

"(6) Any retail sale for recreational purposes made by a vendor

whose business is seasonal and whose retail establishment is not open to the public for at least four consecutive months of each year.

"(7)    Any sale at a state or county fair.

"Sec. 5.    Each sale of a restricted item in violation of this act is a separate offense.

"Sec. 6.    Any person who violates the provisions of this act is guilty of a misdemeanor for the first offense, and a gross misdemeanor for each succeeding offense. Such a person upon conviction for the first offense shall pay a fine not to exceed $100 or be imprisoned for a period of not more than ten days; and for the second offense shall pay a fine not to exceed $500 or be imprisoned for a period of not more than 30 days or both; and for the third or each subsequent offense shall pay a fine of not more than $750 or be imprisoned for a period of not more than six months or both.

"Sec. 7.    This act shall be in effect on and after July 1, 1967."